STATE of Maine

v.

Thomas HAFFORD.

Supreme Judicial Court of Maine.

Jan. 22, 1980.

John McElwee, Dist. Atty., Alan F. Harding (orally), Brian E. Swales, Asst. Dist. Attys., Houlton, for plaintiff.

Robert F. Ward (orally), Houlton, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

Defendant was convicted by a jury in the Superior Court (Aroostook County) of robbery, 17–A M.R.S.A. § 651(1)(B), and armed robbery, 17–A M.R.S.A. § 651(1)(E). On appeal, he asserts that a statement made by the victim shortly after the robbery, identifying him as one of the perpetrators, was erroneously admitted in evidence. Since evidence of that statement was admissible under the "excited utterance" exception to the hearsay rule, M.R.Evid. 803(2), we deny the appeal.

From the evidence at trial, the jury could have found the following: At about 2 a. m. on February 2, 1979, two young men, both wearing masks over their faces, knocked on the apartment door of Beecher Cook, age 72, of Houlton. The shorter of the two was defendant Thomas Hafford and the taller, his brother Gary. The two brothers pushed their way into the apartment, and defendant held a knife to Cook's ribs as he removed Cook's wallet containing some $25.00. Gary Hafford then cut the telephone receiver from the wall and, just before the two brothers fled, defendant told Cook to stay in the apartment "[or] you'll be a dead man."

During the incident defendant had sliced Mr. Cook's hand severely with his knife. Cook wrapped his hand in a towel to absorb the blood and waited several minutes, fearing that his assailants were still in the building. When he though it safe to leave, he immediately went to the apartment of a neighbor, Stella Winslow, and asked her to call the police. On Mrs. Winslow's inquiry, Cook briefly described the robbery. According to her testimony, admitted at trial

over defendant's objection, Cook told her that by their voices he had recognized his assailants to be Gary and Thomas Hafford.

At trial Mr. Cook denied having told Mrs. Winslow that he knew who the robbers were. He also stated that he could not identify either of them, by their voices or otherwise, and that he had never even met the defendant Thomas Hafford. However, Gary Hafford had been Cook's next-door neighbor in the same building for some months prior to and including the day of the robbery. Finally, Gary himself testified that he and his brother Thomas were the two masked individuals who had entered Cook's apartment and robbed him.

On appeal to this court, defendant renews his contention that Mrs. Winslow's testimony as to what Cook told her was inadmissible hearsay. The State argues in response that such testimony was admissible upon either of two theories: (1) as a nonhearsay statement "of identification of a person made after perceiving him" under M.R. Evid. 801(d)(1)(B), where, as here, declarant testifies at trial and is subject to cross-examination, or (2) as an "excited utterance" under M.R.Evid. 803(2). We have no occasion to determine whether the statement was rendered nonhearsay by the application of Rule 801(d)(1)(B) because we agree with the State that, even if the statement was hearsay, it was admissible under the "excited utterance" exception.

We interpret the presiding justice's admission of evidence of Cook's statement under the *res gestae* doctrine as an invocation of the "excited utterance" exception to the hearsay rule. *See* M.R.Evid. 802, 803(2). In making his ruling on the preliminary question of admissibility, *see* M.R.Evid. 104(a), the justice must be taken to have made the findings of fact necessary to comply with Rule 803(2)—namely, that (1) the statement related to a startling event or condition and (2) the declarant made the statement while under the stress of excitement caused by that startling event or condition. Unless those findings were clearly erroneous, it was within the discretion of the court to admit the statement in evi-

dence. *See* M.R.Evid. 403; *State v. Williams*, Me., 395 A.2d 1158, 1162–63 (1978).

■ The justice could properly have concluded from the evidence that at the time Cook made the statement he was still under the stress of excitement caused by the event. After his assailants left the apartment, Cook went to seek Mrs. Winslow's aid just as soon as he believed it safe to do so. His hand was bleeding and wrapped in a towel, and Mrs. Winslow testified that he appeared to be "shaken up." His statement naming the Hafford brothers as the robbers, in answer to Mrs. Winslow's questions, obviously related to a startling event, the robbery and the knifing of his hand.

■ Although no error was committed in admitting the statement, we take this occasion to express our disapproval of the use of the term *res gestae*. As stated in 6 Wigmore, *Evidence* § 1767, at 255 (Chadbourne rev. 1976):

The phrase res gestae has long been not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle. It is harmful, because by its ambiguity it invites the confusion of one rule with another and thus creates uncertainty as to the limitations of both. It ought therefore wholly to be repudiated as a vicious element in our legal phraseology.

*See also* Morgan, "A Suggested Classification of Utterances Admissible as Res Gestae," 31 *Yale L.J.* 229, 229 (1922). Since the promulgation of the Rules of Evidence in 1976, we look there to determine when hearsay may be received in evidence. Rule 802 specifically declares that "[h]earsay is not admissible except as provided by law or by these rules."

Although many of our pre-Rules cases have in terms discussed the "*res gestae* exception," *see, e. g., State v. Lafferty*, Me., 309 A.2d 647, 658 (1973); *State v. Ellis*, Me., 297 A.2d 91, 93 (1972); *Welch v. Jordan*, 159 Me. 436, 439–40, 194 A.2d 841, 843 (1963),

and although Rule 803(2) was intended to codify the decisional law as developed in that line of cases, *see* Advisors' Note to Rule 803, Field & Murray, *infra* at 202–03, the drafters of our Rules of Evidences specifically avoided using the term *res gestae* in order to expunge that phrase from our Maine law of evidence. *See* Field & Murray, *Maine Evidence* § 803.2 (1976). Continued use of that label by the bench and bar would serve only to confuse and mislead.

■ Finally, we reject defendant's contention that the evidence was insufficient to prove his guilt beyond a reasonable doubt. In addition to the strong circumstantial evidence placing Thomas Hafford in the vicinity of the crime in the company of his brother Gary shortly after its occurrence, the jury had Gary's categorical testimony that Thomas had participated in the crime from beginning to end. The credibility of Gary Hafford and the weight to be given his testimony were for the jury. *See State v. Flaherty*, Me., 394 A.2d 1176 (1978).

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY and ARCHIBALD, JJ., did not sit.