**STATE of Maine**

v.

**Duane P. VIGUE.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1980.

Decided Oct. 1, 1980.

David W. Crook, Dist. Atty., Alan Kelley (orally), Susan B. Cole, Robert J. Daviau, Asst. Dist. Attys., Augusta, for plaintiff.

Bourget & O'Donnell, Joseph O'Donnell, (orally), Augusta, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GODFREY, Justice.

Duane Vigue appeals from convictions of burglary, 17–A M.R.S.A. § 401 (1979), and theft by unauthorized taking, 17–A M.R.S.A. § 353 (1979), arising out of events occurring on the morning of June 9, 1979. Trial was by jury in Superior Court, Kennebec County. The appellant contends that the trial justice erred in three rulings: first, by refusing to instruct the jury that certain testimony could be used for impeachment purposes only; second, by refusing, in a voir dire competency hearing, to ask a proposed child witness whether he knew the consequences of lying; and, third, by not sustaining an objection to state counsel's improper final argument. We affirm the judgments of conviction.

In the early morning hours of June 9, 1979, Joyce Paradis and her nine–year–old son, Richard, awoke when the doorbell of their house rang. Mother and son got out of bed, peered out a living room window, and observed the appellant's van parked in their driveway. Shortly thereafter, they observed the appellant leave the garage of their house and drive away. Joyce testified that appellant was carrying a CB radio when he came out of the garage. Joyce and Richard went to the garage where they discovered that a CB radio which had been attached to their automobile was missing.

Later that same day, Joyce Paradis was visited by a number of young persons, including the appellant. When the appellant arrived at the Paradis residence, Joyce Paradis apparently accused him of having taken the CB radio. An argument ensued to which, in part at least, one young visitor, Daren Beaulieu, was privy. An investigating officer, William Fisher, arrived at the

Paradis home in the early evening of June 9 and questioned Joyce, her son Richard, and Beaulieu, the young visitor.

■ During trial, Daren Beaulieu, a defense witness, testified that he never told Officer Fisher that the appellant had admitted to being at the Paradis residence on the morning of the crime. The state called Fisher in rebuttal. The following exchange took place between the prosecutor and Fisher:

Q   And would you tell the jury precisely what Daren Beaulieu said in regards to whether or not the Defendant admitted to having been there at 4:00 o'clock in the morning?

A   Mrs. Paradis had told me that Vigue had admitted that he was there, but there was no way that he touched the referenced CB.

Q   That is what Mrs. Paradis said?

A   Yes

Q   Was Mr. Beaulieu sitting there?

A   Yes, he was right there at the table talking to us and Daren was present, and I said: 'Is that what you heard?' And Daren said: 'It is.'

Appellant's counsel did not object to this testimony, but at the close of evidence appellant's counsel submitted proposed written instructions to the trial court, one of which stated in general terms that evidence of a prior inconsistent statement of a witness is admissible only to impeach the credibility of the witness and not to establish the truth of the statement. If Officer Fisher's testimony had actually amounted to evidence of a prior inconsistent statement by Beaulieu, defendant would have been entitled to a limiting instruction under M.R. Evid. 105.[1]

When the trial court failed to give the proposed instruction, appellant's counsel again requested that the instruction be given, specifying that "there was some evidence ... that Daren Beaulieu at one time might have said something different and I wanted the jury to know that that isn't

---

1.  Although inadmissible hearsay for purposes of substantive proof, see M.R.Evid. 802, testimony as to a prior unsworn, inconsistent statement of a witness may be admitted for the limited purpose of impeaching the witness under M.R.Evid. 607.

being used, that his previous statement can't be used as substantive evidence, it's only for impeachment purposes." The court replied, "I don't recall he made any statement at all," and denied counsel's request. Appellant's counsel preserved his objection.

Although the requested instruction was correct as an abstract proposition by virtue of Rules 105, 607 and 802 of the Maine Rules of Evidence, the trial justice apparently concluded that there was no testimony at trial to which such an instruction could have been properly applied. We cannot say that he erred in reaching that conclusion. The meaning of the quoted testimony of Officer Fisher was so obscure that we cannot hold, as a matter of law, that what Beaulieu had said at the Paradis home according to Fisher's testimony was in fact inconsistent with Beaulieu's testimony at the trial.

According to Fisher, Beaulieu's prior statement had been "It is." In the context of the question asked, "Is that what you heard?" and in the light of what had been testified to by Fisher and others at the trial, that statement was reasonably open to at least two interpretations other than the one defendant ascribes to it. The reference could have been to the content of the statement attributed by Fisher to Joyce Paradis; that is, perhaps Beaulieu was saying that he had already heard the same proposition announced either by Joyce Paradis or someone else. Or, even if Beaulieu was referring to a statement made by the appellant, Beaulieu could have been agreeing merely with the last part of Mrs. Paradis' hearsay statement that appellant denied stealing the CB radio. The trial Justice did not err in refusing to give the requested instruction in a case where no objection had been made when the ambiguous testimony was given and where defendant had done nothing on cross–examination to elucidate its meaning.

## II.

Appellant also contends that the trial court erred in finding Joyce Paradis' nine–year–old son, Richard, competent to testify without asking the witness, as requested by appellant's counsel, if he knew the consequences of lying under oath. The record discloses that the proposed child witness was asked various questions on voir dire.[2]

2. The record of the voir dire reads, in pertinent part:

THE COURT: What is your name?
THE WITNESS: Richie.
THE COURT: Richie what?
THE WITNESS: Paradis.
THE COURT: Pierce?
THE WITNESS: Paradis.
THE COURT: How old are you, Richard?
THE WITNESS: Nine.
THE COURT: What grade are you in?
THE WITNESS: 4th.
THE COURT: Are you a good student?
THE WITNESS: Yes.
THE COURT: And what do you get for marks?
THE WITNESS: Hundreds.
THE COURT: Hundreds all the time?
Now do you know if somebody asks you to tell the truth, do you know what that means?
THE WITNESS: Yes.
THE COURT: What does it mean to you? What is the difference between telling the truth and telling a lie?
THE WITNESS: Well
THE COURT: If I were to say that this paper is black, what I am telling you, is that the truth or a lie?
THE WITNESS: A lie.

THE COURT: Why?
THE WITNESS: Because it ain't black.
THE COURT: Because it isn't black. So if you are asked to tell a story, you are going to tell something that is true; is that correct? And that means what?
THE WITNESS: What?
THE COURT: That it took place or didn't take place?
THE WITNESS: It did.
THE COURT: It did. All right. . Now I want you to stand up and I am going to have this lady –
[DEFENSE COUNSEL]: Your Honor, before that, I have one more suggestion. I wonder if you would ask him what the consequences of not telling the truth are?
THE COURT: Well, I am not too certain that is a legitimate question. Some people believe one thing, some don't. And I am not going to impose upon a 9 year old. I am convinced that he is–
[PROSECUTOR]: I am satisfied if he just states on the record that he knows the importance of telling the truth here, whether it is religious or whatever, I don't care.
THE COURT: You do know that you are telling the truth; is that correct?

We must determine whether the court's refusal to ask the requested question was an abuse of discretion. *State v. Pomerleau*, Me., 363 A.2d 692, 695 (1976).

Maine Rule of Evidence 601 is controlling authority for the determination of the competency of witnesses. *State v. Pinkham*, Me., 411 A.2d 1021 (1980). Under section (a) of the rule, every person is competent to be a witness unless otherwise provided in the rules. However, section (b) sets forth specific exceptions to section (a). At issue here is clause (b) of section (b), providing that a person is disqualified to be a witness if the court finds him incapable of understanding the duty of a witness to tell the truth. M.R.Evid. 601(b) cl. (b). Appellant contends that because this Court, in *State v. Pinkham, supra,* attached significance to the evidence that the proposed child witness understood the meaning of punishment, the trial justice here abused his discretion by not probing the child's understanding of the consequences of lying.

Neither *Pinkham* nor any of the cases decided on the basis of the law as it existed before the Rules of Evidence became effective stand for the proposition that it is indispensable to a finding of competency that the proposed child witness understand the consequences of lying under oath. *See State v. Samson*, Me., 388 A.2d 60 (1978); *State v. Pomerleau*, Me., 363 A.2d 692 (1976); *State v. Brewer*, Me., 325 A.2d 26 (1974); *State v. Ranger*, 149 Me. 52, 98 A.2d 652 (1953).

■ When such a witness is proposed, the court must exercise its sound judicial discretion to evaluate the child's testimonial competency under Rule 601 on the basis of the totality of the voir dire. *State v. Pinkham, supra,* at 1024; *State v. Samson, supra,* at 64. Still valid under the Rules of Evidence is the proposition stated in *State v. Pomerleau, supra,* at 695, that the competency of the child witness must be deter-

mined by the exercise of sound judicial discretion "ad hoc, on the basis of the special circumstances of each situation."

Considering the totality of the voir dire of the child witness in the instant case, we have no basis for holding that the trial justice abused his discretion in determining that the child was capable of understanding the duty of a witness to tell the truth. Nothing more is required by clause (b) of M.R.Evid. 601(b).

### III.

In his closing argument to the jury, defense counsel, apparently seeking to discredit Joyce Paradis' testimony, suggested that burglars would not ring the doorbell of a home they were about to enter. To rebut that suggestion, the prosecutor, in his closing argument, said:

> But when you are in law enforcement and you are sitting in enough cases, you learn a lot about this stuff and you learn that that is not the way criminals always work . . . . [I]t is very common for burglars to go around and check out places and see if anybody is at home before they go in and do their deeds because they don't want to be doing this stuff when people are home. So, it is very common to go around ringing the door bell and knocking on the door.

Defense counsel objected at this point without stating the specific grounds for his objection. The court replied, "No, I think the argument is proper. You may continue." Defendant did not ask for a curative instruction or move for a mistrial.

Appellant contends that in making the quoted argument the prosecutor had asserted his personal knowledge of a fact in issue with prejudicial effect on the defense and in violation of Maine Bar Rule 3.7(e)(2).[3]

■ Argument based on an analysis of the evidence, for any position or conclusion

---

THE WITNESS: (Witness nodding in the affirmative.)

**3.** Maine Bar Rule 3.7(e)(2) provides in pertinent part: "In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (iv)

Assert his personal knowledge of the facts at issue, except when testifying as a witness; (v) Assert his personal opinion . . . as to the credibility of a witness."

with respect to the credibility of a witness is not ethically objectionable. Maine Bar Rule 3.7(e)(2)(v). In this case, the defense had attempted to discredit the testimony of Joyce Paradis and her son by suggesting that burglars would be unlikely to ring the doorbell of a dwelling, and the prosecutor was apparently seeking to reconcile doorbell ringing with criminal conduct. The prosecutor's impropriety lay in his assertion that he had special knowledge acquired through his experience in law enforcement. By asserting special knowledge of a criminal *modus operandi*, the prosecutor was, in effect, supplying the jury with additional evidence which might otherwise have required the testimony of an expert witness. *See State v. Gervais*, Me., 394 A.2d 1183, 1187 (1978). Under Maine Bar Rule 3.7(e)(2)(iv), such argument is improper. Because the prosecutor's argument contained both proper and improper strains, it was particularly important for counsel to do more than enter a general objection. Ordinarily, as M.R. Crim.P. 51 provides, proper preservation of an objection for appeal requires that counsel make known to the court the action he wants the court to take or his objection to the action of the court and the grounds for his objection. *See* 3 H. Glassman, *Maine Practice, Rules of Criminal Procedure* § 51.-2, at 424–26 (1967 and Supp.1975 at 175–76). Careful observation of this rule allows the trial justice to correct errors and reduce prejudice, thus serving the interests of promptness and accuracy in the administration of justice. Without specification of the grounds for objection or a request for a curative instruction on the record, an appellate court may conclude that counsel made a tactical decision to waive his objection. The objection was not properly preserved.

Of course, M.R.Crim.P. 52(b) permits this Court to note obvious errors or defects affecting substantial rights although they were not properly brought to the attention of the trial court. *See* 3 *H. Glassman, supra,* § 52.3, at 430. On the record before us, we cannot say that the impropriety in the prosecutor's final argument was so prejudicial, having such a strong tendency to produce manifest injustice, as to require reversal. *See State v. McKeough*, Me., 300 A.2d 755, 757 (1973). The appellant's defense rested on a theory of alibi, supported by the testimony of his mother and a companion who had been with him on the morning of the crime. We are not persuaded that the jury verdict would have been affected by the prosecutor's saying he knew from experience that burglars often ring doorbells to test for the presence of occupants in a structure before entering.

There are no other issues in the case requiring the attention of this Court.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.