STATE of Maine

v.

**Roger TANGUAY.**

Supreme Judicial Court of Maine.

Argued April 26, 1990.

Decided May 25, 1990.

James E. Tierney, Atty. Gen., Garry L. Greene, Asst. Atty. Gen., Augusta, for the State.

Thomas Van Houten (orally), Wood & Van Houten, Sanford, for defendant.

Before McKUSICK, C.J., and ROBERTS, CLIFFORD, GLASSMAN, HORNBY * and COLLINS, JJ.

McKUSICK, Chief Justice.

On October 9, 1988, defendant Roger Tanguay shot and killed Harris Stockman, Jr. After a jury trial, the Superior Court (York County, *Fritzsche, J.*) convicted him of depraved indifference murder. *See* 17–A M.R.S.A. § 201(1)(B) (1983). Defendant appeals, contending that various evidentiary rulings and inadequate jury instructions by the court constitute reversible error. Finding no merit to his contentions, we affirm.

John O'Connor, a friend of the victim, testified that the two of them spent several hours on the day of the shooting drinking beer and driving around in O'Connor's truck. The pair wound up on a dirt road leading to defendant's trailer in Limington. According to O'Connor's testimony at trial, defendant approached them and initiated a conversation. Since defendant and the victim apparently knew each other, all three men continued up the road to the defendant's property to have beer and "shoot[ ] the breeze." In the course of the conversation, the victim commented that he didn't care whether he lived or died. Defendant then entered his trailer, emerged with a gun, and attempted to pass it to the victim. When the victim pushed the gun away, defendant became agitated, raised the gun to the victim's head and fired.

Defendant testified at trial and told a very different story. According to defendant, O'Connor and the victim were tres-

* Hornby, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

passing on his property and approached him in a threatening manner. The gun went off during a scuffle as the two trespassers attempted to beat and rob defendant.

After the shooting, O'Connor struck defendant in the face with a bottle, tied him up, and fled to call the police. The police arrived on the scene and, a short time later, arrested defendant. He was indicted on one count of knowing or intentional murder and one count of depraved indifference murder. Although the jury acquitted defendant on the first count, it found him guilty on the second.

## I.

### Transcribed Prior Statements of O'Connor

■ The tape-recorded interview of O'Connor by two State Police detectives after the shooting was transcribed. At trial, defense counsel extensively cross-examined O'Connor and the two detectives about O'Connor's prior statements and read portions of the transcripts into the record. When defense counsel finished cross-examining the detectives, the State moved to introduce the full text of the transcripts on the ground that, pursuant to M.R.Evid. 106, the whole "ought in fairness to be considered contemporaneously with [the parts read into the record during cross-examination]." Defendant does not challenge the court's admission of the documents but contends that the court erred by failing to instruct the jury on the limited purpose for which the statements could be considered. *See State v. Vigue*, 420 A.2d 242, 244, n. 1 (Me.1980) (prior unsworn statements may be considered only for impeachment and not as substantive proof). As defendant's trial counsel did not request such an instruction, we review only for obvious error. We find none.

Pointing to the jury's acquittal on the intentional murder count, defendant asserts that the only substantive evidence supporting his conviction for depraved indifference murder is contained in the transcripts of O'Connor's prior statements and that, therefore, the court's failure to in-

struct the jury about the limited evidentiary purpose of the transcripts constitutes obvious error. Defendant's assertion misstates the record. Testimony from O'Connor and from defendant himself supports the jury conviction.

O'Connor testified that defendant and the victim "pushed" the gun back and forth between each other and that when defendant took the gun, he "kind of rolled the cylinder in his hand." According to O'Connor, defendant's comments and actions showed that he was playing a type of Russian roulette immediately prior to the shooting. On cross-examination, O'Connor also confirmed that portion of his prior statement that the defendant laughed, "cocked the chamber back, and ... spun the hammer like that there" before killing the victim. Defendant himself later testified that he had the gun ready so that he would "have something to scare [intruders] away with," and that on the day in question he actually had two guns:

> [O]ne had two shots in it, the other one didn't have any. One is .22, the other is .38. I didn't know which one I grabbed, both guns look alike, they're both the same.

From this evidence, the jury could rationally have found the necessary elements of depraved indifference murder. *See State v. Lagasse*, 410 A.2d 537, 540 (Me.1980). Indeed, it would appear that the jury made a discriminating assessment of the evidence by acquitting defendant of intentionally killing the victim. There was adequate substantive direct evidence, entirely apart from the transcripts, to support the conviction. The fact that the court did not *sua sponte* instruct the jury to limit the proper role of the transcripts did not constitute error.

## II.

### Hearsay Testimony of Other Witnesses

■ After witnessing the shooting, O'Connor fled to a nearby house and phoned the police. The owner of the house and the police dispatcher with whom O'Connor spoke both testified at trial about

what O'Connor told them immediately after the incident. Defendant made no objection to their hearsay testimony at trial, but contends on appeal that the court erred in allowing it. We, however, find no error in admitting the hearsay, least of all any obvious error.

There can be little doubt that O'Connor's statements immediately after the shooting constitute excited utterances within the meaning of M.R.Evid. 803(2). For the hearsay exception for excited utterances to apply, (1) a startling event must have occurred, (2) the statements must relate to the event, and (3) they must have been made while the declarant is under the stress of excitement caused by the event. *See State v. Walton*, 432 A.2d 1275, 1277 (Me.1981). O'Connor testified that he went directly from the scene of the shooting to the neighbor's home. The neighbor testified that O'Connor was "[v]ery emotional, very much in shock ... nervous, afraid," that "he was shaking, his eyes were wide," and that his voice was "excited, loud." The statements obviously related to the shooting O'Connor had just witnessed. Accordingly, these out-of-court statements properly went before the jury under the excited utterance exception.

### III.

### *The Victim's Reputation for Violence*

■ At trial, defendant sought to testify that the victim had allegedly been questioned about a prior murder and that defendant had been told that the victim was "always in trouble" and was a "good boy to stay away from." On objection by the State, the court excluded the proffered testimony, ruling, *inter alia*, that the balance to be struck under M.R.Evid. 403 required exclusion, and that in any event the evidence fell short of proving the victim's reputation for violence. We find no error. In the context of the record evidence describing the circumstances of the killing, the court could rationally conclude that any limited probative value the proffered evidence might have in support of defendant's claim of self-defense was substantially outweighed by the danger of confusing and misleading the jury. We defer to the court's exercise of its broad Rule 403 discretion. *See State v. Heald*, 393 A.2d 537, 542–43 (Me.1978). We need not consider the other reasons advanced by the State in support of excluding the evidence.

The entry is:

Judgment affirmed.

All concurring.