STATE of Maine

v.

Robert G. SMITH.

Supreme Judicial Court of Maine.

Argued May 15, 1992.
Decided July 20, 1992.

David W. Crook, Dist. Atty., Alan P. Kelley, Deputy Dist. Atty., Augusta, for the State.

J. Mitchell Flick (orally), Winthrop, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Robert Smith appeals from a judgment of conviction entered in the Superior Court (Kennebec County, *Delahanty, C.J.*) on a jury verdict finding Smith guilty of gross sexual assault. 17–A M.R.S.A. § 253(1)(A) (1983 & Supp.1991). Smith contends that the motion justice erred by not suppressing a certain statement he made to a police officer and that the trial court abused its discretion by admitting certain evidence of prior bad acts over his objection. We find neither error of law nor an abuse of discretion and affirm the judgment.

On December 5, 1990, a Kennebec County grand jury returned an indictment charging that on or about November 20, 1990, Robert Smith compelled the victim to engage in a sexual act with him.[1] The facts underlying this charge, as revealed by the victim's trial testimony, are the following. Smith met and began dating the victim in the summer of 1988. In August of that year, the two moved into an apartment together and continued to live with each other until November 1990.[2] Experiencing difficulty in their relationship, the two began living apart for a while "to see how things worked out." Smith was at the victim's apartment on Monday, November 19, 1990, where he and the victim were "arguing and ... trying to work things out." Smith spent the night, sleeping on the couch. The next morning, the two argued some more about their future together. The victim eventually indicated that she did not wish to discuss the matter any further and asked Smith to leave. At that point, Smith "got really angry," pushed the victim down on the bed and took her clothes off. He then taped both her ankles and wrists and, though the victim strenuously objected and resisted by kicking and scratching, he penetrated her both anally and vaginally. The victim was able to kick the tape from her feet and Smith later partially cut the tape from her wrists and left the apartment. The police later found Smith, unconscious, in the apartment of a friend. Smith, who had apparently mixed drugs and alcohol, was transported to the hospital by paramedics at about 10:30 a.m.

At about four o'clock in the afternoon, while at the hospital, Captain Emmons read the *Miranda*[3] warnings to a somewhat groggy Smith and advised him that he had been accused of sexual assault. Smith initially agreed to answer some questions, then changed his mind. Captain Emmons left. At about ten o'clock that night, Smith was released from the hospital, arrested, and taken to the Gardiner Police Department for processing. Captain Emmons again advised Smith of his *Miranda* rights at the station house. Emmons testified that he wanted to make sure Smith was clear on what he was charged with and what his rights were because Smith was groggy earlier in the day when he was first advised of the charge and of his rights. Smith stated that he did not want to answer any questions. Then Captain Emmons informed Smith of the charge against him and that the victim accused him of taping her hands and feet and sexually assaulting her. Smith replied, "[Y]ou know ... it's not uncommon, we used duct tape before in the past." The processing was concluded and no further conversation took place.

---

1. 17–A M.R.S.A. § 253 (1983 & Supp.1991) provides in pertinent part:

   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:
      A. The other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E.
   17–A M.R.S.A. § 251(1)(E) prior to amendment by P.L.1991, ch. 457, provided:
      E. "Compulsion" means physical force, a threat of physical force or a combination

thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.

2. The victim gave birth to a baby girl sometime in early 1990. The couple never married.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Smith sought suppression of the statement he made to Captain Emmons at the station house after he invoked his right to remain silent. The court (*Chandler, J.*) in a ruling from the bench, denied the motion to suppress finding that Smith's statement was voluntary and not the product of interrogation.[4] Smith did not request additional findings of fact. *See* M.R.Crim.P. 41A. Smith was later found guilty of gross sexual assault after a jury trial.

## I. MOTION TO SUPPRESS

Smith's first contention is that the motion justice erred in refusing to suppress the statement made to Captain Emmons on the night of his arrest. Smith argues that his statement should have been ruled inadmissible because Captain Emmons' statement of the specific nature of the charges against him was the functional equivalent of interrogation after he had invoked his right to remain silent.

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use statements, either exculpatory or inculpatory, resulting from custodial interrogation of a defendant "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Those safeguards included the now familiar *Miranda* warnings. *Id.* at 478–79, 86 S.Ct. at 1629–31. Once warnings have been given, if the defendant indicates that he or she wishes to remain silent, the interrogation must cease. *Id.* at 473–74, 86 S.Ct. at 1627–28. In *Rhode Island v. Innis*, 446 U.S. 291, 299–302, 100 S.Ct. 1682, 1688–90, 64 L.Ed.2d 297 (1980), the United States Supreme Court expanded the concept of interrogation under *Miranda* to include not only express questioning, but its functional equivalent.

That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words

or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* at 301, 100 S.Ct. at 1689–90. Voluntary statements that are not the product of interrogation are not within the *Miranda* rule. *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1629; *Innis*, 446 U.S. at 302–04, 100 S.Ct. at 1690–91; *State v. Philbrick*, 436 A.2d 844, 849 (Me.1981). The test for determining whether a police officer's statement is the functional equivalent of interrogation reasonably likely to elicit an incriminating response is an objective one. *Innis*, 446 U.S. at 301–02, 100 S.Ct. at 1689–90; *State v. Nixon*, 599 A.2d 66, 67 (Me.1991). Despite his failure to request further findings of fact, Smith contends that the motion justice committed error by incorrectly applying a subjective standard rather than the required objective standard to determine whether Captain Emmons' statement was reasonably likely to elicit an incriminating response.

■ After examining the motion hearing transcript, we are unable to conclude that the motion justice applied an inappropriate standard. Contrary to Smith's assertions, the court's inquiry into and comments on Captain Emmons' "design" or "intent" does not render its decision erroneous as a matter of law. *Innis*, 446 U.S. at 301–02 & n. 7, 100 S.Ct. at 1689–90 & n. 7 (though test is objective, examination of intent of the police is not irrelevant). The court's conclusion that, in the circumstances, Captain Emmons' comment did not constitute interrogation and that Smith's statement was voluntary "will be upheld unless the evidence shows that a contrary inference was the only reasonable conclusion that could have been drawn." *State v. Durepo*, 472 A.2d 919, 921 (Me.1984). The evidence makes no such showing.

## II. PRIOR BAD ACTS EVIDENCE

■ During direct examination, the victim testified quite specifically about the

---

4. The court did order the suppression of other statements, not relevant to this appeal, made by

Smith to a friend.

sexual assault. She stated that she was fighting Smith and "tried to kick him away." She further testified that she scratched Smith and was hitting him until he taped her wrists and was screaming until Smith put a shirt in her mouth. The victim continued to relate the events on the day in questions when the following exchange took place:

Q. Okay, [ ], had anything like this ever happened before?

A. No.

Q. The duct tape and the rope, had he ever used that before on you?

A. No.

Q. In terms of when this happened, as you sit here, sit here now, is there—do you think there was anything you could do to stop that when it happened?

I'm sorry?

A. I didn't want to get hit and I didn't want him to do anything to my daughter.

Q. You didn't want to get hit?

A. Yes.

Q. Was there a reason why—I mean a reason why you thought that is what would happen?

A. It has happened before.

[DEFENSE COUNSEL]: Object.

THE COURT: It is overruled.

Q. I'm sorry, you said it happened—

A. Before.

Q. Was that something that had happened once in awhile or—

A. Yes.

Q. Okay. When would it happen?

A. After arguments and stuff.

Q. Okay. Was there any other particular time that he would be like that?

A. When he was drunk or on drugs or something.

Q. Okay.

. . . .

Q. Before you said something about seeing a look, a look on his face or whatever.

A. He just got really angry and out of control.

Q. Had you ever seen that before?

A. Yeah.

Q. Okay. So could you—is there anything that you could have done to stop this that you know of?

A. Probably not.

Q. Okay. Did you do your best to stop that?

A. Yeah. Make him calm down a little bit but it didn't.

Smith contends that he was prejudiced by the admission of evidence of his prior conduct with the victim and that the court abused its discretion by permitting the jury to consider that evidence.[5] Smith asserts that the victim's prior testimony that she physically resisted the assault and that she was ultimately bound establishes the "compulsion" element of the crime. Smith contends that evidence to show compulsion because of fear of physical harm based on prior experience is inconsistent with the victim's testimony of her strenuous resistance to the assault. He argues, therefore, that the introduction of evidence of his prior assaultive behavior to show that the victim was in fear of physical harm and thus compelled to engage in the sexual act was superfluous, irrelevant, and unfairly prejudicial. We disagree.

■ The admissibility of evidence concerning other crimes, wrongs, or acts is limited by Rule 404(b) of the Maine Rules of Evidence.[6] Though such evidence may not be offered to prove the defendant's propensity to commit the crime with which he is charged, Rule 404(b) does not "prevent the introduction of evidence which is relevant to specified facts and propositions." Field & Murray, *Maine Evidence* § 404.3 at 109 (2d ed. 1987); *see also State*

---

**5.** Smith did not request that the court render a specific instruction limiting the jury's consideration of that evidence. *See* M.R.Evid. 105. We discern no obvious error in the court's failure to *sua sponte* instruct the jury on the limited purpose of this evidence. *See State v. Tanguay,* 574 A.2d 1359, 1361 (Me.1990).

**6.** M.R.Evid. 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

*v. Whiting*, 538 A.2d 300, 302 (Me.1988). Such evidence may be admitted when it is "probative of some element of the crime for which the defendant is being tried." *State v. DeLong*, 505 A.2d 803, 806 (Me. 1986) (quoting *State v. Goyette*, 407 A.2d 1104, 1108 (Me.1979)). Compulsion is an element of the crime of gross sexual assault. 17–A M.R.S.A. § 253(1)(A). The definition of "compulsion," controlling for the purposes of this case, means "physical force, a threat of physical force, *or a combination thereof* ...." 17–A M.R.S.A. § 251(1)(E) (emphasis added); *see supra* note 1. Even though the victim testified that she physically resisted Smith, she also testified that she was afraid of being hit, based on Smith's prior assaultive behavior, and fearful of what Smith might do to the baby. Absent a stipulation by Smith that the victim had submitted to the charged offense as a result of compulsion, the State is entitled to present evidence of both force and fear.[7] The court did not err in concluding that the testimony as to Smith's prior misconduct was probative on the compulsion element of gross sexual assault. *See State v. Giovanini*, 567 A.2d 1345, 1346 (Me.1989); *State v. Kotsimpulos*, 411 A.2d 79, 81 (Me.1980).

 Even if evidence of prior bad acts is probative and relevant, it may still be excluded if, in the discretion of the trial court, its "probative value is substantially outweighed by the danger of unfair prejudice." M.R.Evid. 403; *see Giovanini*, 567 A.2d at 1346; *State v. Boone*, 563 A.2d 374, 376 (Me.1989). We review the trial court's determination under Rule 403 for an abuse of discretion. *State v. Tanguay*, 574 A.2d 1359, 1362 (Me.1990). We are unpersuaded by Smith's contention that the limited evidence of his prior misconduct is superfluous and that its prejudice substantially outweighs its probative value. The victim did not relate any details or specific instances of Smith's prior misconduct, and its admission was within the discretion of the trial court.

Smith's other contentions are without merit and do not require discussion.

The entry is:

Judgment affirmed.

All concurring.

---

7. The present version of section 251(1)(E) specifically states that the definition of "compulsion" places no duty on the victim to resist the actor. 17–A M.R.S.A. § 251(1)(E) (Supp.1991) *as amended by* P.L.1991, ch. 457 (effective Oct. 9, 1991).