2001 ME 83

STATE of Maine

v.

Richard ROBINSON.

Supreme Judicial Court of Maine.

Submitted on Briefs: April 2, 2001.
Decided: May 21, 2001.

Stephanie Anderson, District Attorney, Robert Ruffner, Asst. Dist. Atty., Portland, for State.

William S. Norbert, Esq., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Richard Robinson appeals the judgment of conviction of assault, 17–A M.R.S.A. § 207 (1983 & Supp.2000), entered upon a jury verdict in the Superior Court (Cumberland County, *Fritzsche, J.*). Robinson contends that (1) the court erred in admitting the out-of-court statements of Crystal Murano, the victim of Robinson's assault, pursuant to the excited utterance exception to the hearsay rule, M.R. Evid. 803(2); (2) the admission of Murano's statements violated his constitutional right to confront his accuser; and (3) there was insufficient evidence for the jury to find beyond a reasonable doubt that he committed the crime of assault. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In October 1998, Robinson was arrested for assaulting his then live-in girlfriend, Crystal Murano, at their apartment in Portland. A jury convicted Robinson of assault.[1] The events leading up to Robinson's arrest and subsequent conviction may be summarized as follows.

[¶ 3] On October 4, 1998, at approximately 8:30 P.M., Steven Haskins, who was Murano's next door neighbor, called the police after he heard loud yelling from Murano's apartment. The walls that separated his apartment from Murano's were not very thick. For about ten minutes, he heard an angry male voice repeatedly yelling, and heard responses from a fearful female voice. Convinced that the female was getting "beat up," Haskins called 911 and ran outside to meet the responding officers.

[¶ 4] Within minutes, two Portland police officers who had been patrolling in the vicinity arrived at the apartment complex, and pursuant to Haskins's directions, proceeded to Murano's apartment. Officer Mark Gibbons knocked on her door and announced their presence. When, after about thirty seconds, someone answered the door, Gibbons saw a woman, whom he later identified as Murano, in a terrified state, "crying," "upset," and "frazzled." Gibbons observed that her face was red and puffy, and that she had visible red marks on her neck.

---

1. This was Robinson's second trial. In the first trial, the jury failed to agree on a verdict, and the Superior Court (Cumberland County, *Crowley, J.*) declared a mistrial.

[¶ 5] Gibbons asked Murano what had happened, and she responded that Robinson had hit her and that he was in the bedroom.[2] Gibbons went to the bedroom, where he found the door locked. He ordered Robinson to open the door, and when Robinson complied, Gibbons arrested him for assaulting Murano. According to Gibbons, Robinson was shirtless, completely covered with sweat, and appeared to be "wild eyed" and "maniacal."

[¶ 6] Gibbons took Robinson outside, got some paperwork, returned to Murano's apartment, and spoke to Murano again regarding the incidents of that night. At this point, anywhere from three to twelve minutes had passed since he first spoke to Murano when he arrived at her apartment. Murano was still crying and appeared terrified and "very, very upset." She again told Gibbons that Robinson had hit her and this time, more specifically, that he had "thrown [her] onto the living room floor" and had "punched, kneed, kicked and choked" her.[3]

[¶ 7] Before trial, Murano died in an unrelated car accident. At trial, the State placed into evidence several photographs showing Murano's injuries from the night in question along with the testimony of Steven Haskins and Officer Gibbons. Gibbons's testimony and the photographs demonstrated that Murano had swelling around her eyes, a strangulation mark on her throat, a small abrasion on her back, and several large bumps on her head. Over objections, Gibbons also testified re-

garding Murano's statement that Robinson had "punched, kneed, kicked and choked" her. The jury convicted Robinson of assault,[4] and this appeal followed.

## II. DISCUSSION

### A. Excited Utterances

[¶ 8] Robinson first challenges the admissibility of Murano's statement to Officer Gibbons on the ground that the statement was inadmissible as hearsay.

[¶ 9] A hearsay statement is an out-of-court statement offered at trial to prove the truth of the matter asserted. M.R. Evid. 801.[5] Hearsay statements are not admissible as evidence unless they fall within a specific exception to the prohibition. M.R. Evid. 802. An "excited utterance" is such an exception. M.R. Evid. 803(2); see also Fed.R.Evid. 803(2).

[¶ 10] A court may admit a hearsay statement as an "excited utterance" if the court finds "(1) that a startling event occurred; (2) that the hearsay statement related to the startling event; and (3) that the hearsay statement was made while the declarant was under the stress of excitement caused by that event." State v. McLaughlin, 642 A.2d 173, 175 (Me.1994) (citation omitted). These findings are preliminary questions for the trial court pursuant to M.R. Evid. 104, and "[u]nless those findings were clearly erroneous, it was within the discretion of the court to admit the statement in evidence." State v. Longley, 483 A.2d 725, 728 (Me.1984);

---

**2.** Robinson does not challenge the admission of this statement.

**3.** The court overruled Robinson's objection to this testimony and also denied Robinson's request to voir dire Officer Gibbons on the exact number of minutes that had passed between Murano's first and second statement.

**4.** Robinson had three prior assault convictions. Thus, the assault was alleged as a

Class C offense. Indictment (Nov. 5, 1998). The court sentenced Robinson to the Department of Corrections for four years, with all but one year of the sentence suspended, and placed Robinson on probation for four years.

**5.** Certain types of out-of-court statements offered for their truth are excluded from the definition of hearsay statements. See M.R. Evid. 801(d).

*State v. Hafford,* 410 A.2d 219, 220 (Me. 1980).

 [¶ 11] The purpose behind admitting "excited utterances," despite their hearsay nature, is that witnessing or experiencing a startling event produces a state of excitement which "stills the reflective faculties and negatives a purpose to fabricate evidence." M.R. Evid. 803(2) advisers' note. Thus, a crucial question in determining whether a statement qualifies as an excited utterance is "how long the state of excitement may be found to last." *Id.*

 [¶ 12] "There is no bright-line time limit for the requisite state of excitement." *McLaughlin,* 642 A.2d at 175. Instead, to determine whether a declarant was still under the stress of the excitement caused by the event when the declarant made the statement, courts must look to a variety of factors, including the nature of the startling or stressful event,[6] the amount of time that passed between the startling event and the statement,[7] the declarant's opportunity or capacity for reflection or fabrication during that time,[8] the nature of the statement itself,[9] and the declarant's physical and emotional condition at the time of the statement.[10] *See, e.g., State v. Tanguay,* 574 A.2d 1359, 1361–62 (Me.1990) (admitting a statement as excited utterance, where the statement was made after the declarant fled from the scene of a shooting, and where the declarant appeared "very much in shock," "shaking," with his eyes "wide," and his voice "excited, loud").

---

6. *See State v. Spencer,* 1997 ME 76, ¶¶ 1–2, 697 A.2d 55, 55 (admitting a statement of a witness to vehicular manslaughter); *State v. Tanguay,* 574 A.2d 1359, 1360–61 (Me.1990) (admitting a statement of a witness to murder); *State v. Longley,* 483 A.2d 725, 727–28 (Me.1984) (admitting a statement of a witness to car accident); *State v. Franklin,* 478 A.2d 1107, 1110 (Me.1984) (admitting a statement of a witness to murder of parent); *State v. Hafford,* 410 A.2d 219, 219–20 (Me.1980) (admitting a statement of a victim of armed robbery).

7. *See Spencer,* 1997 ME 76, ¶ 2, 697 A.2d at 55 (admitting "a statement made by [the declarant] immediately after the accident"); *State v. McLaughlin,* 642 A.2d 173, 175 (Me. 1994) (admitting a statement made "ten minutes" after assault); *State v. Dube,* 598 A.2d 742, 744 ( Me.1991) (excluding a statement made "the morning following the alleged rape"); *Longley,* 483 A.2d at 729 (admitting a statement made "within one to ten minutes" after the event); *Hafford,* 410 A.2d at 220 (admitting a statement where "[the declarant] went to seek Mrs. Winslow's aid just as soon as he believed it safe to do so" after the robbery). ,

8. *See State v. Lafrance,* 589 A.2d 43, 46 (Me. 1991) (excluding a statement where "nearly a day had passed between the incident and the statement" and "[the declarant] had earlier recounted the events of the previous night to a friend ...."); *State v. Leone,* 581 A.2d 394, 399 (Me.1990) (excluding a statement where "[the declarant] changed his initial story from the statement that he was alone to one where there was a possible accomplice ....").

9. *See Leone,* 581 A.2d at 398 (excluding a statement where the defendant declared, "[I] don't know why they shot me. I didn't do it."). "[E]vidence that the statement ... was self-serving" weighs in favor of the conclusion that "the statement was the result of reflective thought." MCCORMICK ON EVIDENCE 208 (John W. Strong ed., 5th ed.1999) (1954).

10. *See Spencer,* 1997 ME 76, ¶ 2, 697 A.2d at 55 (admitting a statement where "[the declarant's] condition was described as 'visibly shaking ... just shaking from head to toe, crying, visibly hysterical.'"); *Tanguay,* 574 A.2d at 1362 (admitting a statement where "[the declarant] was '[v]ery emotional, very much in shock ... nervous, afraid' ... 'he was shaking, his eyes were wide,' and ... his voice was 'excited, loud.'"); *Longley,* 483 A.2d at 729 (admitting a statement where "after the accident [the declarant] was 'hysterical'"); *Hafford,* 410 A.2d at 220 (admitting a statement where "[the declarant's] hand was bleeding and wrapped in a towel, and ... he appeared to be 'shaken up'").

[¶ 13] Robinson does not dispute that there is competent evidence in the record of (1) a startling event, and (2) a connection between the event and Murano's statements to the officer. He contends, however, that Murano's statement that she was "thrown onto the living room floor and ... punched, kneed, kicked and choked" was not made while she was still under the stress of the startling events, *see State v. Dube*, 598 A.2d 742, 744 (Me.1991), and that "[t]oo much time passed between the arrival of police at the apartment ... and subsequent interview of Murano."

[¶ 14] Contrary to Robinson's contentions, however, three to twelve minutes was not too much time for Murano to have remained under the stress of Robinson's attack. *See McLaughlin*, 642 A.2d at 175 (concluding that an assault victim's statements, made ten minutes after the attack, were properly admitted pursuant to excited utterance exception). The State established that Murano was still "very, very upset" at the time that she made the statement. Murano appeared terrified and was still sobbing from the events of that night. She had visible bodily injuries resulting from the attack. She had not had the time nor the opportunity to consult with anyone, and there was no evidence that she had had the time for reflection. We conclude that the trial court did not err in finding that Murano was still under the stress of the events when she made her statement to Officer Gibbons.[11]

[¶ 15] Robinson contends, in addition, that the court erred when it denied his request to voir dire Officer Gibbons before the court admitted the officer's recitation of Murano's statement. Robinson did not seek to voir dire Gibbons until after he testified on direct examination that "maybe" three to four minutes had passed between the time he first arrived at Murano's apartment and the time when he returned after placing Robinson under arrest. At that point, Robinson sought to voir dire the officer to determine the exact number of minutes that had passed during the intervening time. Having already heard Gibbons's estimate of "maybe" three to four minutes, the court denied Robinson's request for voir dire. Because Officer Gibbons later stated, on cross-examination, that a longer period of time—anywhere from six to twelve minutes—could have passed during that interval, Robinson argues that the court erred when it declined to allow him to voir dire Officer Gibbons.

[¶ 16] The passage of time is an important factor in determining whether a statement qualifies within the excited utterance exception. MCCORMICK ON EVIDENCE 207 (John W. Strong ed., 5th ed.1999) (1954). It is not, however, the controlling factor. *Id.; McLaughlin*, 642 A.2d at 175.[12] Had Robinson sought to voir dire

11. The defendant's reliance on *State v. Barnies*, 680 A.2d 449 (Me.1996) is misplaced. In *Barnies* we applied the same rules and law referenced herein but concluded that the alleged victim's own hesitation in responding to the officer's questions "simply allowed too much time for her to reflect and consider." Because the issue before us is the brief delay caused by the officer having to take Robinson out of the building, not by Murano's voluntary choice not to respond, *Barnies* is inapplicable to the facts before us and we need not determine whether it remains good law.

12. Other state courts that have examined the "excited utterance" exception have regularly concluded that the passage of time, although an important factor, is not the controlling factor. *See, e.g., State v. Harris*, 207 W.Va. 275, 531 S.E.2d 340, 344 (2000) (admitting statements of a domestic battery victim, made somewhere around thirty to forty minutes after the battery); *State v. Cornell*, 129 Ohio App.3d 106, 717 N.E.2d 361, 366 (1998) (admitting statements of a domestic violence victim, made ten minutes after the attack, reasoning that "the time element is not dis-

the officer *before* he testified regarding the passage of time on direct examination, the court likely would have, and certainly should have, allowed a brief voir dire or required an offer of proof. However, having heard the officer's estimate of three to four minutes, the court did not exceed the bounds of its discretion in declining to stop the examination for voir dire. Moreover, any error in declining to allow voir dire was harmless. *See State v. Joel H.,* 2000 ME 139, ¶ 21, 755 A.2d 520, 525. Whether three, six, or twelve minutes had passed, the record amply supports the court's conclusion that Murano was still under the stress of the assault when she made her statement. *See* M.R. Evid. 803(2).

### B. Confrontation Clause

[¶ 17] Robinson next contends that the "court's admission of hearsay evidence also violated [his] constitutional right to confront his accuser." The U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI; *see also* ME. CONST. art. I, § 6. "It is well settled, however, that the confrontation clause does not require the exclusion of all hearsay evidence." *State v. Francis,* 610 A.2d 743, 744 (Me.1992) (citing *Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970)). If the hearsay evidence is firmly rooted as an exception to the hearsay rule, the evidence is deemed reliable for Confrontation Clause purposes. *White v. Illinois,* 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (holding that admission of a hearsay statement pursuant to the excited utterance exception does not violate the defendant's rights pursuant to the Confrontation Clause); *Fran-*

*cis,* 610 A.2d at 745 (recognizing "hospital records" as "firmly rooted hearsay exception").

[¶ 18] The excited utterance exception is firmly rooted in our jurisprudence. For more than a century, we have recognized exceptions to the hearsay rule for excited utterances. *See State v. Wagner,* 61 Me. 178, 193–97 (1873) (admitting into evidence "exclamations of mortal terror caused by a deadly assault"). "[Rule 803(2) ], creating a hearsay exception for excited utterances, is abundantly supported by Maine cases." Field & Murray, *Maine Evidence* § 803.2 at 420 (4th ed.1997). Because Murano's statements were admitted pursuant to the excited utterance exception, we conclude that Robinson's rights pursuant to the Confrontation Clause were not violated. *See White,* 502 U.S. at 357, 112 S.Ct. 736.

### C. Sufficiency of the Evidence

[¶ 19] Robinson finally contends that the evidence was insufficient to support the jury's finding of assault. When reviewing a criminal defendant's challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State to determine whether a fact-finder rationally could find every element of the charge beyond a reasonable doubt. *State v. Black,* 2000 ME 211, ¶ 14, 763 A.2d 109, 113.

[¶ 20] Contrary to Robinson's contentions, the jury could have rationally concluded that he "intentionally ... cause[d] bodily injury or offensive physical contact to [Murano]." 17–A M.R.S.A. § 207. Competent evidence in the record

positive; it is but one relevant factor to be considered in the admissibility analysis") (citation omitted); *W. Valley City v. Hutto,* 5 P.3d 1, 5–6 (Utah Ct.App.2000) ("[T]he length of time between the event and the declaration is not a yardstick by which reliability can be measured.") (citation omitted).

shows that (1) Murano and Robinson were in their apartment on the night in question; (2) Haskins, who was Murano's next door neighbor, heard an angry male voice repeatedly yelling at a fearful female voice, causing him to believe that the female was getting "beat up"; (3) when the police arrived, Murano stated that Robinson had hit her, and later, more specifically, that Robinson had "punched, kneed, kicked and choked" her; and (4) Officer Gibbons's observations and photographs of Murano showed visible bodily injuries, which were consistent with Murano's statement that Robinson had hit her.

[¶ 21] In sum, we conclude that the court did not err in admitting Murano's excited utterance, and the evidence was sufficient to support a conviction of assault.

The entry is:

Judgment affirmed.