**2001 ME 150**

**STATE of Maine**

v.

**Roderick DILL.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 15, 2001.
Decided: Oct. 30, 2001.

Geoffrey A. Rushlau, District Attorney, F. Todd Lowell, Asst. Dist. Atty., Wiscasset, for State.

William F. Pagnano, Esq., Rockland, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Roderick Dill appeals his conviction for theft, Class C, 17–A M.R.S.A. §§ 353 & 362(3–A) (1983 & Supp.2000) entered after a jury trial before the Superior Court (Lincoln County, *Mills, J.*). Dill contends that: (1) the identification evidence was insufficient to support the conviction; (2) the photo line-up, admitted into evidence, improperly included Dill's mug shot photo; and (3) the jury instructions were improper because they: (i) were submitted to the jury in writing; (ii) failed to include the word "unauthorized" in the initial written instructions transmitted to the jury; and (iii) included instruction on the inference that may be drawn from possession of recently stolen property. Finding no error in the trial court's actions, we affirm the judgment.

## I. FACTS

[¶ 2] The evidence would support the following findings: Shortly before July 16, 1999, Kevin Haley purchased a new utility trailer. He parked it on the front lawn of his residence in Whitefield next to his plow truck. The trailer was there earlier in the evening when Haley and his wife departed for a shopping trip. As Haley and his wife were returning home at approximately 10:30 P.M., he spotted his trailer beside Route 126 near the intersection with Rooney Lane in Whitefield. Haley turned his vehicle around and pulled in behind the trailer. As he did so, he saw an individual walk away from the trailer, get into a truck and begin to drive away with no headlights. Haley backed his vehicle down to an intersection to block the exit of this other vehicle. The truck then turned around; its headlights were turned on, and it drove past Haley's vehicle, going off the road, through a ditch, and knocking over a road sign before heading out onto Route 126.

[¶ 3] Haley pursued the vehicle at speeds of up to 95 miles per hour. He had identified the vehicle as a red, 1978 or 1979, Ford pick-up truck, but continued the pursuit to determine its registration plate number. At one point the truck slammed on its brakes, causing Haley's vehicle to bump it. Haley's wife recorded the registration plate number. The Haleys then broke off the chase and contacted law enforcement.

[¶ 4] Haley returned to his trailer where he was met by Trooper Greg Stevens of the Maine State Police. The Haleys and Stevens were joined by David Magnusen, who lived on Rooney Lane. Magnusen reported that at approximately 10:30 he heard metallic sounds and a commotion on Route 126. Investigating with a flashlight, he came upon a man with a pick-up truck and a trailer that had apparently separated from the trailer hitch. Together, they unsuccessfully tried to reattach the trailer to the hitch. Magnusen noted that the

truck was an older red pick-up truck and that the man had dark hair, a mustache, stood about six feet tall and weighed "a couple hundred pounds." Magnusen could not positively identify Dill in the courtroom. Magnusen told the individual that he would get his tool box and return. As Magnusen was returning with his tool box, he saw a vehicle leave the area. Five to ten minutes later, he saw Haley and the officer at the scene and reported what he had witnessed.

[¶ 5] With the registration plate number given to him by the Haleys, Stevens determined that the vehicle with that plate number was a red, 1978 Ford pick-up truck registered to Dill. Four days later, Stevens contacted Dill at Dill's home in Chelsea. He noted that Dill was approximately six feet tall, had dark hair and a mustache, and weighed two hundred pounds. Stevens identified Dill in the courtroom.

[¶ 6] Stevens explained to Dill that he was investigating the trailer theft incident. He then asked Dill if he was at home at quarter to eleven on the night of July 16. Dill responded that he might have been. Stevens asked Dill if anyone else had borrowed his truck. According to Stevens's testimony, Dill responded as follows: "He

basically told me that if somebody did, he wouldn't tell me anyway." Dill made no further statement, and Stevens summonsed Dill for the theft charge.

[¶ 7] Stevens prepared an eight-picture photo line-up that he showed to Magnusen. Magnusen could not positively identify any one individual, but marked x's on three individual pictures that he said could be of the person he encountered the night of July 16. One of those individuals pictured was Dill. The other individuals marked in the photo line-up looked quite similar to Dill.

## II.  PROCEDURAL HISTORY

[¶ 8] In November 1999, Dill was indicted for theft, 17–A M.R.S.A. § 353,[1] by the Lincoln County Grand Jury. By operation of 17–A M.R.S.A. 362(3–A), the theft charge was elevated to a Class C because of Dill's four prior theft convictions alleged in the indictment.[2]

[¶ 9] A jury trial was held August 22, 2000. Over Dill's objection, the photo line-up shown to Magnusen was introduced as a State exhibit. Before the jury was instructed, the parties discussed jury instructions. Dill's attorney objected to the

---

1.  17–A M.R.S.A. § 353(1) (1983) states:
     § 353.  Theft by unauthorized taking or transfer
     1.  A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

2.  17–A M.R.S.A. § 362(3–A) states:
     § 362.  Classification of theft offenses
     . . . .
     3–A.  Theft, or any attempt at theft, is a Class C crime if the actor has 2 prior Maine convictions for any combination of theft, any violation of section 702, 703 or 708 or any violation of section 401 in which the crime intended to be committed inside the structure is theft, any violation of section 651 or attempts thereat.  For purposes of

this subsection, the dates of both of the prior convictions must precede the commission of the offense being enhanced by no more than 10 years, although both prior convictions may have occurred on the same day.  This subsection does not apply if the commission of the 2 prior offenses occurred within a 3–day period.  The date of a conviction shall be deemed the date that sentence is imposed, even though an appeal was taken.  The date of a commission of prior offenses shall be presumed to be that stated in the complaint, information or indictment, notwithstanding the use of the words "on or about" or the equivalent.
17–A  M.R.S.A.  §  362(3–A)  (1983  &  Supp. 2000).

court's proposed instruction on the inference that may be drawn from one's being in possession of recently stolen property. *See* 17–A M.R.S.A. § 361(2).[3] Dill's attorney also objected to the court's plan to both read the instructions to the jury and give the jury a written copy of the instructions. The court overruled both of those objections, indicating that it would give the recent possession inference instruction and that it would provide written instructions to the jury.

[¶ 10] When the jury reconvened, and before closing arguments,[4] the court instructed the jury on issues relating to: (1) evidence evaluation and circumstantial evidence; (2) witness credibility; (3) the State's burden to prove the elements of the charge beyond a reasonable doubt; and (4) the elements of the theft charge, including the inference that may be drawn from a defendant's exclusive possession of recently stolen property. In its instructions, which are included in the transcript but not the appendix,[5] the court indicated that among the elements of theft, the State must demonstrate that a person has obtained or exercised "unauthorized" control over the property. While no copy of the written instructions is available in the rec-ord, apparently the word "unauthorized" was not in the written version of the instructions. The court covered this by emphasizing that the word "unauthorized" should have been in the written instructions and indicated to the jurors that a supplemental copy with the word added would be provided to them. Neither party made any objection to the court's address of the omission of the word "unauthorized" from the written jury instructions.

[¶ 11] After the court instructed on the evidence evaluation issues, the burden of proof, and the elements of the charge, the closing arguments were presented. After the closing arguments, the court instructed the jury on procedures for deliberations and return of the verdict, and the jury retired to begin deliberations. The jury asked two questions that are not at issue in this proceeding. The jury then returned a guilty verdict. The matter was continued to develop a presentence report and for sentencing.

[¶ 12] Dill was sentenced to serve four years at the Department of Corrections. An appeal and appeal of sentence was filed. Leave to appeal the sentence was denied on March 16, 2001.

---

3. 17–A M.R.S.A. § 361(2) (1983) provides:
    Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be, and proof that the theft or robbery occurred under circumstances constituting a violation of section 401 also shall give rise to a presumption that the defendant in exclusive possession of property recently so taken is guilty of the burglary.

4. M.R.Crim. P. 30(b) provides, in pertinent part, that "[t]he court, at its election, may instruct the jury before or after argument, or both."

5. The appendix, filed by counsel for this appeal, does not include the judgment from which the appeal is taken, although required by M.R.App. P. 8(g)(3), and does not include a transcript of the jury instructions or objections thereto, although required by M.R.App. P. 8(h)(3) when there is a challenge to jury instructions. Further, the record does not include, anywhere, a copy of the written jury instructions to which counsel objected. When an appendix does not include mandatory items, and the record does not include a document that is subject to challenge on appeal, the points on appeal pertaining to the missing items may be deemed to be not preserved. Parties preparing an appendix for appeal should include all items made mandatory by M.R.App. P. 8(g) & (h).

## III. DISCUSSION OF POINTS ON APPEAL

### A. Sufficiency of Identification Evidence.

[¶ 13] The State relied heavily upon circumstantial evidence. A conviction may be based on circumstantial evidence. *State v. Deering*, 1998 ME 23, ¶ 13, 706 A.2d 582, 585–86; *State v. Poulin*, 1997 ME 160, ¶ 15, 697 A.2d 1276, 1280. In this case, the evidence pointing to Dill included an eye witness who had met him, exactly described his physical characteristics and the truck registered to him, and picked him along with two others who closely resembled him out of a photo line-up. The record also included evidence that identified Dill's registration plate number on the vehicle fleeing the scene and the officer's observation of that vehicle at Dill's house, confirmed by Dill to be his, along with an inculpatory response to a question as to whether someone else might have been using the vehicle at the time of the incident.

[¶ 14] These factors, taken together, are sufficient circumstantial evidence that Dill was the individual who towed the trailer from Haley's home to the vicinity of Magnusen's home before it separated from his truck, whom Magnusen assisted in attempting to get the trailer hooked back to the truck, and who then fled the scene pursued by Haley.

### B. The Photo Line–Up.

[¶ 15] The photo line-up introduced into evidence is a copy of photographs, not actual photos. It contains no identification numbers or height lines that might indicate that the photos of Dill, or anyone else, are mug shots. *Cf. State v. Almurshidy*, 1999 ME 97, ¶ 13, 732 A.2d 280, 284; *State v. Robbins*, 666 A.2d 85, 86 (Me.1995) (photos were mug shot-type photos because height chart visible).

[¶ 16] We most recently addressed the admissability of photo arrays that may contain mug shots of defendants in *Almurshidy*, 1999 ME 97, ¶ 14, 732 A.2d at 285. There we continued to apply the three-part test previously stated in *Robbins*, 666 A.2d at 88 n. 7. The elements of that test are: "(1) the prosecution must show a demonstrable need to introduce the photograph; (2) the photograph, if shown to the jury, must not imply that the defendant has a prior criminal record; and (3) the introduction at trial must not draw particular attention to the source or implications of the photograph." *Almurshidy*, 1999 ME 97, ¶ 14, 732 A.2d at 285.

[¶ 17] The three elements in this case are not a close call. There is no indication in the copied photos that they are based on mug shots. There are no identification numbers, height lines, or other things typical of mug shots. Except for the faces of the eight individuals, not much else can be discerned from the photos. Further, use of the photo line-up was appropriate because Dill had questioned the validity of Magnusen's identification and his recollection of the identification. Thus, the *Almurshidy–Robbins* test is met in this case.

[¶ 18] Dill also asserts that the photo line-up was more prejudicial than probative and, thus, should not have been admitted under M.R. Evid. 403. Because identification was contested, the court did not exceed the bounds of its discretion in making this decision. There was no violation of M.R. Evid. 403.

### C. Jury Instruction Issues.

#### 1. The Inference Instruction.

[¶ 19] There is no direct evidence that Dill removed the trailer from Haley's lawn. There is also no dispute, however, that the trailer was improperly removed in a theft. Soon after the theft unquestionably occurred, circumstantial evidence

pointed to Dill as being in exclusive, physical possession of the stolen trailer.[6] In these circumstances, the inference instruction pursuant to 17–A M.R.S.A. § 361(2) was fully appropriate.

2. Giving Written Instructions.

[¶ 20] Giving the jury written instructions is regularly practiced where the court has the time and technical capacity to prepare such instructions. Maine Rule of Criminal Procedure 30(b) invites written instructions. "The court, at its election, may provide written instructions to the jury covering all or a part of what is orally provided." M.R.Crim. P. 30(b). *See also State v. Williams*, 653 A.2d 902, 907 (Me. 1995). Giving the jury written instructions was fully appropriate and within the broad discretion given to the trial courts in instructing juries.

3. Omission of the Word "Unauthorized."

[¶ 21] The court corrected any misimpression in the written instructions by emphasizing that the instruction should properly be considered to include the word "unauthorized." Counsel did not object to the court's proposed method of addressing the omission of the word "unauthorized" by emphasizing it in the oral instructions and by committing to provide the jury with a corrected copy, although neither the original nor any corrected copy of the written instruction appears in the record. There was no error in the trial court's address of the apparent missing word in the written instructions.

[¶ 22] The remaining points on appeal do not merit discussion.

The entry is:

Judgment affirmed.

---

**6.** This is not a constructive possession case requiring special instructions on possessive conduct by the defendant. *See State v. Ketchum*, 1997 ME 93, ¶ 12, 694 A.2d 916, 918.