2011 ME 111

STATE of Maine

v.

John E. TAYLOR.

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2011.
Decided: Nov. 17, 2011.

Heather Gonzales, Esq. (orally), Strike, Goodwin & O'Brien, Portland, for appellant John Taylor.

Todd Collins, District Attorney, (orally), John M. Pluto, Asst. Dist. Atty., Prosecutorial District No. 8, Caribou, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1]  In this appeal we consider, again, application of the excited utterance exception to the hearsay rule, M.R. Evid. 803(2), to a 9–1–1 call, in this instance when the 9–1–1 call followed a brief call to the victim's ex-husband to remove her children from the threatening situation.

[¶ 2]  John E. Taylor appeals from a judgment of conviction of one count each of burglary (Class B), 17–A M.R.S.

§ 401(1)(B)(4) (2010); domestic violence assault (Class C), 17–A M.R.S. §§ 207–A(1)(A), 1252(4–A) (2010); domestic violence criminal threatening (Class C), 17–A M.R.S. §§ 209–A(1)(A), 1252(4–A) (2010); and obstructing the report of a crime (Class D), 17–A M.R.S. § 758(1)(A) (2010), entered in the Superior Court (Aroostook County, *Cuddy, J.*) following a jury trial. Taylor argues that (1) the evidence was insufficient to support a finding of entry with intent to commit a crime to support the burglary charge;[1] (2) the court erred by admitting evidence relating to duct tape found in Taylor's vehicle; and (3) the court erred in applying the excited utterance exception to the hearsay rule to admit a recording of the victim's 9–1–1 call. The State asserts that the court erred in admitting evidence to support Taylor's theory of an alternate suspect.[2] We affirm the judgment.

## I. CASE HISTORY

[¶ 3] Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Townsend,* 2009 ME 106, ¶ 2, 982 A.2d 345.

[¶ 4] From November 2009 to February 2010, John Taylor and his children lived with the victim and her two young children in the victim's home, a two-story duplex in Caribou. In February 2010, Taylor's relationship with the victim ended. The victim asked Taylor to move out; she changed the locks to the house in February 2010 and had deadbolts installed on March 9, 2010. The victim received a temporary order for protection from harassment against Taylor on March 2, 2010, prohibiting Taylor from having contact with her or her children and from entering her residence.

[¶ 5] In the pre-dawn hours of March 13, 2010, the victim was sleeping in her bedroom on the second floor of her home with her ten-month-old child sleeping next to her. The doors to the victim's home were locked. While the victim slept, Taylor broke the glass of a basement window, entered the basement, then broke through a locked interior door at the top of the basement stairs by chipping away at the wood and breaking the door's lock. Taylor was dressed head to toe, including gloves, in black or dark-colored clothing and had a "wonder bar" (a demolition tool) and a screwdriver with him.

[¶ 6] The victim was unaware that Taylor was in her home until she was awakened and saw him standing over her bed. Taylor told the victim that he wanted to talk, at which point the victim got out of bed and led Taylor downstairs to get him away from the children and because her only phone, a cell phone, was in the kitchen.

[¶ 7] Once downstairs, the victim told Taylor that he needed to leave and reached for her phone, but Taylor grabbed her from behind and pulled her into the dining area. Taylor forced the victim to a sitting position on the floor with him behind her, put his hand to her mouth, pulled out the screwdriver, and threatened to "use" it on the victim if she struggled. Taylor then dropped the screwdriver, put

1. Taylor confirmed at oral argument that he does not argue on appeal that the evidence was insufficient to find that he entered the victim's home.

2. The State has the right to challenge the court's admission of evidence concerning an alternative suspect pursuant to 15 M.R.S. § 2115–A(3) (2010) without filing a notice of appeal because the defendant in this case appeals from the judgment of conviction. *See, e.g., State v. Rabon,* 2007 ME 113, ¶ 12 n. 4, 930 A.2d 268.

his hand over the victim's mouth and nose so that she could not breathe, and whispered "good-bye" in her ear.

[¶ 8] Believing Taylor was about to kill her, the victim began to struggle. The victim then indicated that she would be willing to talk, as Taylor had the victim pinned on her back on the floor and threatened to punch her in the face if she screamed. The victim was 5′4″ tall and 110 pounds; Taylor was 6′1″ and 182 pounds.

[¶ 9] Taylor told the victim that he loved her and wanted to move back in. Taylor subsequently allowed the victim to go alone to the home's only bathroom, which was on the second floor. Having no means of escape with her children from the second floor, however, the victim went back downstairs to "face the music" and to keep Taylor talking so that she could "live through the night." Taylor put the victim's cell phone near her at one point, but the phone was off. She did not attempt to call 9–1–1 because she was certain Taylor would physically assault her before she could turn the phone on and make a call.

[¶ 10] To get Taylor to leave, the victim suggested that they might get back together, but told him that he needed to leave the house before her children woke up. Taylor agreed and walked to his vehicle which he had parked at some distance from the victim's home. At trial, the victim estimated that approximately one hour elapsed between the time Taylor appeared at her bedside and the time Taylor left her home.

[¶ 11] Within seconds of Taylor leaving her home, the victim activated her cell phone and called her ex-husband, asking him to come immediately to pick up the children. The victim wanted to get her children out of the house quickly, fearing that Taylor might return and also wanting to avoid having her children see her break down "once the adrenaline [was] gone."

[¶ 12] The victim was on the phone with her ex-husband for less than one minute, after which she immediately called 9–1–1. The victim's 9–1–1 call came in at 5:40 a.m. In a shaking and tearful voice, the victim's first statement during the call reported that Taylor had been in her house, that he had threatened her, and that he had just left. After her initial statement, the 9–1–1 operator asked the victim questions to ascertain her name and other information related to the event or to help police identify and locate Taylor. The victim thereafter answered some questions more steadily, but cried and sounded very upset when the 9–1–1 operator asked her about the event.

[¶ 13] The victim's ex-husband picked up the children and was leaving the driveway as the police arrived at the victim's home. The responding officer described the victim as "very tearful and crying." Meanwhile, another police officer stopped Taylor between 5:50 and 6:00 a.m. heading into Presque Isle from Caribou, still wearing all-dark clothing. Despite later claiming at trial that he had no idea why the officer pulled him over, Taylor called his mother before the officer approached him in his car. Taylor asked his mother, if questioned, to tell police that he had just left her home, but his mother later testified that Taylor had not been at her house.

[¶ 14] Taylor was charged with burglary, domestic violence assault, domestic violence criminal threatening, and obstructing the report of a crime. A two-day jury trial was held in October 2010. The victim testified for the State, as did a responding police officer, Taylor's mother, and his stepfather. After the direct examination of the victim, the State offered a recording of the victim's 9–1–1 call. Taylor objected. Having just heard the victim's testimony,

the court admitted the recording pursuant to the excited utterance exception, M.R. Evid. 803(2), to the hearsay rule. The victim's description of the events in the 9–1–1 call was consistent with her trial testimony.

[¶ 15] Taylor's mother and stepfather testified, over Taylor's objection, that they found duct tape, a wonder bar, and a screwdriver in Taylor's vehicle a day or two after Taylor had broken into the victim's home. Taylor's stepfather testified that the wonder bar and screwdriver looked like the tools that Taylor had borrowed from his garage. The stepfather also testified that he had noticed that a roll of duct tape was missing from his garage and assumed that the roll of duct tape found in Taylor's vehicle was his. The State showed a photograph, taken by the police, displaying the wonder bar and the duct tape next to each other, to Taylor's stepfather for the purpose of having the stepfather identify the wonder bar, although the stepfather also referenced the duct tape. The photo was admitted over Taylor's objection.

[¶ 16] In his defense, Taylor offered two witnesses to support an alternate suspect theory. Taylor also testified, and offered a partially corroborating witness, concerning an alibi for Taylor for the night of March 12–13, 2010, that concluded with Taylor allegedly meeting a friend to visit a Caribou petting zoo at about 5:00 a.m. Taylor had not initially offered this alibi to police, but instead had told officers that he had just left his mother's house. The victim's ex-husband testified for the defense that the victim was not crying and did not seem agitated when she called him to pick up the children, but conceded that she might have been in shock at the time.

[¶ 17] The jury found Taylor guilty on all counts of the indictment. Taylor brings this appeal.

## II. LEGAL ANALYSIS

### A. Admissibility of the 9–1–1 Call

[¶ 18] Taylor argues that the court erred and exceeded the bounds of its discretion when it admitted the recording of the 9–1–1 call pursuant to M.R. Evid. 803(2), the excited utterance exception to the hearsay rule. He asserts that the victim had abundant opportunity to reflect and fabricate, because, after Taylor left her house, the victim did not immediately call 9–1–1, but first called her ex-husband.

[¶ 19] We assume for purposes of our discussion that the victim's 9–1–1 call constitutes a hearsay statement that is not admissible as substantive evidence unless it meets an exception to the hearsay rule, such as the exception for excited utterances.[3] M.R. Evid. 802, 803(2). A hearsay statement is admissible as an excited utterance if it is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." M.R. Evid. 803(2).

[¶ 20] Accordingly, "[a] court may admit a hearsay statement as an excited utterance if it finds that: (1) a startling event occurred; (2) the hearsay statement related to the startling event; and (3) the hearsay statement was made while the declarant was under the stress of excitement caused by that event." *State v. Watts*, 2007 ME 153, ¶ 5, 938 A.2d 21. "These findings are preliminary questions

**3.** We do not consider whether the victim's 9–1–1 call meets the definition of a nonhearsay statement as, for example, a prior consistent statement of a witness pursuant to Maine Rule of Evidence 801(d)(1)(B). The parties did not argue the prior consistent statement issue either before the trial court or on appeal.

for the trial court pursuant to M.R. Evid. 104." *Id.* We review the court's foundational findings or implicit findings to support admissibility of evidence for clear error, and we will uphold those findings unless no competent evidence supports the findings. *See State v. Lipham,* 2006 ME 137, ¶ 7, 910 A.2d 388. The trial court acts within its discretion to admit the statement or statements into evidence unless its foundational findings are clearly erroneous. *Watts,* 2007 ME 153, ¶ 5, 938 A.2d 21; *State v. Robinson,* 2001 ME 83, ¶ 10, 773 A.2d 445.

■ [¶ 21] Taylor does not contest the first two elements necessary to support admissibility of the 9–1–1 call as an excited utterance. The record amply supports the conclusion that these elements were met— there was a startling event and the victim's 9–1–1 call related to that event. Taylor's argument focuses on the third element— whether the victim's statement was made while she was under the stress of excitement caused by that event.

■ [¶ 22] "[A] crucial question in determining whether a statement qualifies as an excited utterance is how long the state of excitement may be found to last." *Robinson,* 2001 ME 83, ¶ 11, 773 A.2d 445. There is "no 'bright line' time limit to use in deciding when the stress of excitement caused by a startling event has dissipated." *Watts,* 2007 ME 153, ¶ 6, 938 A.2d 21. In making this determination, a court must instead consider "a variety of factors." *Id.* The factors include:

> the nature of the startling or stressful event, the amount of time that passed between the startling event and the statement, the declarant's opportunity or capacity for reflection or fabrication during that time, the nature of the statement itself, and the declarant's physical

and emotional condition at the time of the statement.

*Id.*

[¶ 23] It is apparent from the evidence admitted at trial that several of these factors were readily met: the nature of the event—Taylor breaking into the victim's home in the night while she was alone with two young children, assaulting her and causing her to fear for her life, and essentially holding her hostage—was startling and stressful; the statement in the form of a 9–1–1 call did not indicate that it was the product of fabrication; and the evidence would support the conclusion that the victim's condition at the time of the statement was one of high emotion. Accordingly, we focus on the remaining two factors suggested in *Watts:* (1) the amount of time that passed between the startling event and the statement, and (2) the victim's opportunity or capacity for reflection or fabrication during that time. *See id.*

[¶ 24] We have upheld determinations that the stress of excitement caused by a startling event had not dissipated after a wide range of times between the startling event and the statement. For example, we implicitly affirmed the trial court's determination that a victim's initial statement to police qualified as an excited utterance when those statements were made five to eight minutes after police were called after a two-hour-long incident in which the victim's husband took her hostage, held her at knifepoint, forced her to perform a sexual act on him, and bound her; she ultimately escaped through a window and drove to a nearby store for help. *State v. Rega,* 2005 ME 5, ¶¶ 3–5, 8–9, 18–19, 863 A.2d 917.

[¶ 25] Reviewing application of the excited utterance exception, we have also approved admission of (1) a statement made after seven minutes had passed between the time the victim called 9–1–1 and

**446**

time she made the statement to the responding police and an unknown amount of time had passed between the startling event and when the victim called 9-1-1, *State v. Ahmed*, 2006 ME 133, ¶ 15, 909 A.2d 1011; (2) a statement made to police more than five to ten minutes after the alleged attack, after the victim had driven herself to the police station, *State v. Barnes*, 2004 ME 38, ¶ 4 & n. 3, 845 A.2d 575; (3) a statement made after three to twelve minutes had passed between the time the police first arrived and the time the victim made statements and some number of additional minutes had passed between the startling event and when police arrived, *Robinson*, 2001 ME 83, ¶¶ 3-6, 14, 773 A.2d 445; and (4) a statement made by the victim after he waited "several minutes" until he thought his assailants had left the building and it was safe to leave, *State v. Hafford*, 410 A.2d 219, 219-20 (Me.1980). *But see State v. Lafrance*, 589 A.2d 43, 46 (Me.1991) (statement not an excited utterance when nearly a day had passed between the event and the statement, and the record showed that the declarant was not still under the stress of the excitement caused by the event); *State v. True*, 438 A.2d 460, 465-66 (Me.1981) (holding that the victim's statement was inadmissible when made two to three hours after victim was allegedly raped because the victim's testimony supported the conclusion that her statement was made with conscious reflection).

[¶ 26] In this case, approximately an hour passed between the time Taylor confronted the victim at her bedside and the time he left her home. Accordingly, less than one hour elapsed between the time when Taylor assaulted the victim and threatened her life and when he left her home, and the victim called 9-1-1 only two minutes after Taylor left her home. We need not determine precisely when the "startling event" ended, whether it was

after Taylor physically attacked the victim and threatened her life, as Taylor asserts, or whether it was when Taylor left the victim's home and the victim wanted to avoid having her children see her break down "once the adrenaline [was] gone." Either way, the evidence allowed the trial court to conclude that the brief amount of time that elapsed before the victim called 9-1-1 permitted her statement to qualify as an excited utterance.

[¶ 27] The second pertinent factor here is the declarant's opportunity or capacity for reflection or fabrication during that time. In this case, the record supports the court's implicit findings that the victim did not have an opportunity or capacity for reflection or fabrication prior to calling 9-1-1. There is no question that the victim remained under a great deal of stress throughout the period that Taylor was in her home, from the time the victim first awakened to find him standing over her in a dark bedroom to the time he ceased to hold her hostage and left her home. Whether the legally operative startling event ended after Taylor's physical assault on the victim or after Taylor left the home, the record evidence supports the determination that the victim did not have the capacity for reflection or fabrication before she made the 9-1-1 call and that the stress of excitement caused by the startling event had not dissipated as of the time the victim placed the 9-1-1 call.

[¶ 28] The fact that the victim made a brief call to her ex-husband before calling 9-1-1 does not, under our case law, require a court to conclude that she had the capacity for reflection or fabrication and that her 9-1-1 call could not qualify as an excited utterance. As the victim testified, she was acting under the adrenaline of the incident with Taylor when she called her ex-husband, and the sole purpose for that call was to get her children to safety be-

cause she feared that Taylor, who had just left, would return.

[¶ 29] We addressed similar facts in *State v. Hafford* when we held that an assault victim's statement to a neighbor was admissible even though the victim wrapped up his injured hand and waited several minutes in his apartment after the attack until he felt it was safe to leave to seek help. 410 A.2d at 219–20. In several other instances, we have held that a declarant's statement qualified as an excited utterance when the declarant made the statement after engaging in a short intervening act after the startling event occurred. *See, e.g., Watts,* 2007 ME 153, ¶ 8, 938 A.2d 21 (holding that a victim's statement to her sister that she had been raped was an excited utterance when, between the time of the assault and her making the statement, the victim dressed herself and walked down the stairs); *Barnes,* 2004 ME 38, ¶ 4 & n. 3, 845 A.2d 575 (holding that the victim's statement to police was admissible when, between the attack and her making a statement to police, the victim got into a car and drove herself to the police station).

[¶ 30] Based on a review of all of the pertinent factors, the trial court did not clearly err in finding that the victim's 9–1–1 call, to the extent it addressed Taylor's attack upon her, was an excited utterance, or abuse its discretion in admitting it as such.

**B. Admissibility of Evidence Pertaining to Duct Tape and Sufficiency of the Evidence**

[¶ 31] Taylor's remaining arguments do not require extensive discussion. The court did not err or abuse its discretion in admitting, over Taylor's objection, testimonial or photographic evidence concerning the presence of duct tape in Taylor's vehicle or his stepfather's missing a roll of duct tape from his garage contemporaneously with Taylor borrowing the wonder bar. *See* M.R. Evid. 401, 402, 403; *State v. Roberts,* 2008 ME 112, ¶ 21, 951 A.2d 803 (stating that, when a party preserved an objection to the admission of evidence, we review the court's determination of relevance of the evidence for clear error and its weighing of the probative value of the evidence against the risk of unfair prejudice for an abuse of discretion); *see also id.* ¶ 28 (stating that a photograph is admissible if it is an accurate depiction, relevant, and its probative value is not outweighed by any tendency toward unfair prejudice).

[¶ 32] Finally, the evidence was sufficient to support a finding that, when, in violation of a temporary order for protection from harassment, Taylor parked off-site, walked to the victim's home in the dark of night wearing dark clothing including gloves and surreptitiously broke into her home through a basement window, he did so with the specific intent to commit a crime therein, that is, to criminally threaten or assault the victim. *See* 17–A M.R.S. § 401(1)(B)(4); *see also* 17–A M.R.S. §§ 207, 207–A(1)(A), 209, 209–A(1)(A) (2010); *State v. Cook,* 2010 ME 81, ¶ 7, 2 A.3d 313 (stating the standard of review and that determining the credibility of witnesses is within the exclusive province of the jury); *State v. Atkinson,* 458 A.2d 1200, 1205 (Me.1983) (stating, in affirming a judgment of conviction for burglary, that "[i]f evidence establishes that after defendant made an unauthorized entry into a structure he [committed a crime] therein, a jury is permitted to infer that he had the intent to commit the [crime] at the time of entry").

[¶ 33] Because we affirm the judgment, we do not reach the State's argument that the court erred in admitting evidence of an

alternative suspect. *See* 15 M.R.S. § 2115–A(3) (2010).

The entry is:

Judgment affirmed.