MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 43
Docket:      And-18-181
Argued:      December 11, 2018
Decided:     March 26, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.


STATE OF MAINE

v.

DWAIN A. SYKES


HJELM, J.

[¶1]  In this case, we again consider the admissibility of statements made by the alleged victim of a domestic violence assault during a 9-1-1 call for emergency assistance, when the victim does not testify at trial.

[¶2]  Dwain A. Sykes appeals from a judgment of conviction entered in the Unified Criminal Docket (Androscoggin County, *Mills, J.*) after a jury found him guilty of domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2018).  During the trial, the court admitted in evidence a recording of a 9-1-1 call after concluding, first, that the victim's recorded statements fell within the excited utterance exception to the hearsay rule, and, second, that the statements were nontestimonial and thus not subject to exclusion by the

2

Confrontation Clause.[1] Sykes asserts that the court erred in both respects. We affirm the judgment.

## I. BACKGROUND

[¶3] The following facts are drawn from the evidence presented at the pretrial hearing on the admissibility of the evidence at issue here, and at trial, with both records being viewed in the light most favorable to the State, *see State v. Metzger*, 2010 ME 67, ¶ 2, 999 A.2d 947, and from the procedural record, *see In re Child of Nicholas G.*, 2019 ME 13, ¶ 2, --- A.3d ---.

[¶4] At the time of the assault, Sykes and the victim had been in a relationship for a number of years and shared a home where they lived with their children. On the morning of October 22, 2017, Sykes and the victim got into an argument in their residence, which was a mobile home. During the argument, Sykes twice hit the victim in her face with a closed fist. At approximately 9:30 a.m., the victim called 9-1-1 to report the assault and

---

[1] The issue of the admissibility of the 9-1-1 recording was presented to the court in a motion in limine filed by the State on the day the trial was scheduled to begin. Sykes challenges the trial court's consideration of the State's motion because it was not timely filed. *See* M.R.U. Crim. P. 12(c) (stating that a party "may make a pretrial motion requesting a pretrial ruling on the admissibility of evidence . . . no later than 7 days before the date set for jury selection"). Although, by rule, the State's motion should have been filed in advance of trial in order to "avoid anticipated disruption of the trial," Field & Murray, *Maine Evidence* § 103.7 at 26 (6th ed. 2007), Rule 12(c) is permissive. A late filing of the motion does not foreclose the court from holding a hearing if, in exercising its discretion attendant to sound case management, the court determines that doing so is the least disruptive way of addressing the evidentiary issue. Here, the court did not err by holding the hearing, notwithstanding the lateness of the motion.

request police assistance. During the call, which lasted fourteen minutes, the victim sounded distressed and sometimes angry but was not audibly crying. Largely in response to the 9-1-1 dispatcher's questions, the victim described the assault, which she said had occurred that morning. Most of the dialogue, however, concerned what was then happening in the residence. Answering the dispatcher's questions, the victim told the dispatcher that Sykes was in an adjacent room in the home with three children and was aware that she had called 9-1-1. The victim also answered the dispatcher's questions about Sykes and what he was doing, about the house, and about potential safety concerns for both the victim and the officers who were en route to the scene.

[¶5] The dispatcher told the victim several times that officers were travelling to the scene but that she would keep the victim on the line until they arrived. Approximately ten minutes into the call, the dispatcher told the victim to instruct Sykes to go outside and wait for the officer. When the victim conveyed that information to Sykes, a loud and angry-sounding male voice is heard. Over the next several minutes, the dispatcher asked the victim a number of times whether Sykes was still in the residence, and each time the victim reported that he was. Finally, near the end of the call, the victim told the dispatcher that an officer had arrived and Sykes had gone outside. At a number

4

of points during the call, between the dispatcher's questions, there were lengthy periods when neither the dispatcher nor the victim spoke.

[¶6]  The first police officer to arrive was a Maine State Police trooper. After a brief conversation with Sykes outside of the residence, the trooper spoke with the victim, who reported that Sykes had punched her twice in the face.  The trooper then returned to Sykes and arrested him.[2]  A second officer, a sergeant with the Maine State Police, arrived at the home and spoke with the victim.  In the course of their conversation, the victim reenacted the assault and described to the sergeant how Sykes had hit her.  Although she allowed the officer to take pictures of her injury, she declined to sign a written statement.

[¶7]  About two weeks later, Sykes was charged with domestic violence assault and pleaded not guilty.  Anticipating the possibility that the victim would not voluntarily testify against Sykes, the State served the victim with a subpoena compelling her attendance at trial, which the court had scheduled for April of 2018.  On the day the trial was scheduled to begin, however, the victim did not appear at the courthouse.  At the State's request, the court issued a material witness warrant for the victim's arrest, *see* M.R.U. Crim. P. 17(h), and

---

[2] In a recording from the trooper's dashboard camera, which was entered in evidence and played for the jury, Sykes admitted that he had slapped the victim in the face but claimed that he had done so in self-defense.

the State filed a motion in limine, requesting the court to determine the admissibility of the three sets of statements made by the victim on the morning of the assault, including the statements she made during the 9-1-1 call. Over Sykes's objection, *see supra* n.1, the court delayed the commencement of trial to the next day and proceeded to hold an in limine hearing.

[¶8] During the hearing on the motion in limine, the court heard testimony from the 9-1-1 dispatcher and listened to the recording of the 9-1-1 call. The court ultimately determined that the victim's statements during the 9-1-1 call, although hearsay, were admissible as excited utterances, *see* M.R. Evid. 803(2), and were nontestimonial and thus not barred from being admitted in evidence by the Confrontation Clause, *see* U.S. Const. amend. VI; *see also* Me. Const. art. I, § 6; *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Metzger*, 2010 ME 67, ¶¶ 13-22, 999 A.2d 947.[3]

[¶9] The next morning, the victim voluntarily appeared at trial and was ordered to remain at the courthouse under police supervision to ensure her availability if called to testify. One of the State's witnesses was the 9-1-1

---

[3] The court excluded from evidence the two other sets of statements encompassed by the State's motion in limine after determining that the victim's statement to the trooper that Sykes had hit her was not admissible as an excited utterance, and that her similar statement to the sergeant was not admissible as a statement of her then-existing physical condition, *see* M.R. Evid. 803(3). The State does not challenge these rulings in this appeal.

dispatcher, through whom the 9-1-1 recording was admitted as evidence without objection from Sykes and played for the jury. Sykes called two witnesses to testify regarding allegedly exculpatory statements made by the victim. Neither party called the victim as a witness.

[¶10] The next day, the case was submitted to the jury, which found Sykes guilty. Following a sentencing hearing held later that month, the court imposed a fully-suspended seven-month jail term and an eighteen-month period of probation. Sykes filed a timely appeal. *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶11] Sykes asserts that the court erred by admitting in evidence the recording of the victim's 9-1-1 call because, he contends, that evidence is inadmissible pursuant to the Maine Rules of Evidence and the Confrontation Clause of the Sixth Amendment, U.S. Const. amend. VI, and article I, section 6 of the Maine Constitution. We consider these assertions in turn after addressing the standard of review.

A.     Standard of Review

[¶12] At the in limine hearing, Sykes made clear that he objected to the admission of the 9-1-1 recording, and after a contested hearing, the court ruled

that the evidence was admissible. When the State offered the recording in evidence during the trial, however, Sykes explicitly stated to the court that he had "[n]o objection" to its admission.

[¶13] "[T]he fact that the trial court has acted on a motion in limine does not relieve counsel of making objections . . . at the appropriate points in the trial in order to make a record and preserve points of error for appeal." Field & Murray, *Maine Evidence* § 103.7 at 28-29 (6th ed. 2007). We have applied this principle—which triggers the more deferential standard of review associated with unpreserved claims of error, *see State v. Solomon*, 2015 ME 96, ¶ 13 n.4, 120 A.3d 661—in the specific circumstance present here, where the court makes a pretrial ruling that certain evidence may be admitted at trial but the opposing party fails to object to the evidence when it is eventually offered at trial, *see State v. Thomes*, 1997 ME 146, ¶¶ 6-7, 697 A.2d 1262; *State v. Varney*, 641 A.2d 185, 186-87 (Me. 1994). But we have recognized an exception to the requirement that the opposing party voice an objection when the court characterizes its pretrial ruling as final and unequivocal. *See State v. Allen*, 2006 ME 21, ¶ 9 n.3, 892 A.2d 456; *see also* M.R. Evid. 103(e) ("A pretrial objection to . . . evidence must be timely renewed at trial unless the court states

8

on the record, or the context clearly demonstrates, that a ruling on the objection . . . is final.").

[¶14]   Here, the court arguably framed its ruling announced at the conclusion of the in limine hearing as definitive.  Nonetheless, Sykes's explicit acquiescence to the admission of the 9-1-1 recording when it mattered most— at trial—generates the question of whether he preserved his claim of error for appellate review.  In the end, however, we will assume, without deciding, that Sykes preserved his objection for appeal by having articulated his opposition to the admission of the recording at the pretrial hearing on the State's motion in limine, even though he ostensibly abandoned that objection at trial.  *See State v. Haji-Hassan*, 2018 ME 42, ¶ 14, 182 A.3d 145 (where we "assum[ed], without deciding, that [a defendant's] arguments and the court's ruling at the hearing on the State's motion in limine served to preserve the objection").  This is because the difference in the standards of review is not consequential here.  Even if we apply the more exacting level of scrutiny attendant to a preserved claim of error, we conclude for the reasons discussed below that no error was committed.

[¶15]   Accordingly, "[w]e review the court's foundational findings or implicit findings to support admissibility of evidence for clear error, and we will

uphold those findings unless no competent evidence supports the findings," *State v. Taylor*, 2011 ME 111, ¶ 20, 32 A.3d 440, and we review the court's ultimate decision to admit hearsay evidence for an abuse of discretion, *State v. Guyette*, 2012 ME 9, ¶ 11, 36 A.3d 916. As to Sykes's claim of a constitutional deprivation, we review de novo the court's decision to admit the evidence. *Metzger*, 2010 ME 67, ¶ 13, 999 A.2d 947.

B.      Excited Utterance

[¶16]  Sykes first contends that the court erred by admitting the victim's statements in the recording of the 9-1-1 call as excited utterances.

[¶17]  Maine Rule of Evidence 803(2) creates an exception to the general rule barring the admission of hearsay and allows the admission of hearsay statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." As we have explained, "[t]he trustworthiness of [such] an excited utterance rests upon the assumption that the startling event produces a statement that is spontaneous and unreflecting and made before there has been time to contrive and misrepresent." *State v. Barnies*, 680 A.2d 449, 451 (Me. 1996) (quotation marks omitted).

[¶18]  In order to qualify as an excited utterance, the hearsay statement must be supported by three foundational elements: "(1) a startling event

occurred; (2) the hearsay statement related to the startling event; and (3) the hearsay statement was made while the declarant was under the stress of excitement caused by that event." *Taylor*, 2011 ME 111, ¶ 20, 32 A.3d 440 (quotation marks omitted). In making these three requisite findings, the court must consider such factors as the nature of both the event and the statement; the amount of time between the event and the statement, and whether the declarant had the opportunity or capacity to reflect or fabricate during that time; and the declarant's physical and emotional condition when the statement was made. *See Metzger*, 2010 ME 67, ¶ 10, 999 A.2d 947.

[¶19] Two of the three foundational elements are not at issue here. Competent record evidence supports, and Sykes does not challenge, the trial court's implicit foundational finding that there had been a startling event— specifically, a domestic assault, which can constitute a startling event for evidentiary purposes*, see State v. Kimball*, 2015 ME 67, ¶¶ 8, 19-20, 117 A.3d 585; *State v. Ahmed*, 2006 ME 133, ¶¶ 14-15, 909 A.2d 1011.[4] Further, the victim's statements made during the call related to that startling event.

---

[4] At the in limine hearing, the evidence included not only the recording of the 9-1-1 call but the testimony of the two officers who described the statements later made by the victim about the assault. Although the court ultimately excluded evidence of the victim's statements to the officers, the court was nonetheless entitled to consider that evidence when determining the admissibility of the statements made by the victim during the 9-1-1 call. *See* Field & Murray, *Maine Evidence* § 104.2 at 36-37.

[¶20]  Instead, Sykes focuses on the remaining foundational element of Rule 803(2) and asserts that the victim's statements on the 9-1-1 recording were not made while she was under the stress of the excitement caused by the startling event because she was "not crying, not fearful," and her statements amounted only to a "matter of fact conversation with a 911 operator."  He also contends that the victim had time to reflect and fabricate during the 9-1-1 call.

[¶21]  In support of its conclusion that the victim's statements to the 9-1-1 dispatcher were excited utterances, the court found that the victim sounded "upset, her voice has tremors on occasion, [and] she is clearly frustrated and practically dejected at the situation."  The court also appropriately considered the victim's immediate circumstances—"the event is continuing, [Sykes] is in the house, she's in the house, the children are in the house, he is speaking with the children, refuses to go outside, [and] they are yelling at each other . . . ."  Contrary to Sykes's contention, even though the record does not clearly establish how much time had passed between the assault and the victim's 9-1-1 call that morning, competent evidence in the record supports this foundational finding that the victim's statements throughout the recording were made while she was under the stress caused by the assault, which occurred sometime earlier, and by the ongoing threat created

by the physical proximity of the victim and her children to her assailant in their mobile home. *See Taylor*, 2011 ME 111, ¶¶ 27-28, 32 A.3d 440 (holding that a victim of domestic violence "did not have an opportunity or capacity for reflection or fabrication" when she called 9-1-1 after making a brief phone call to her ex-husband to come and get the children); *State v. Watts*, 2007 ME 153, ¶¶ 6, 9, 938 A.2d 21; *cf. State v. True*, 438 A.2d 460, 465-66 (Me. 1981) (holding that a statement made two to three hours after the event was not an excited utterance); *State v. Lafrance*, 589 A.2d 43, 46 (Me. 1991) (holding that a statement made nearly a day after the event is not an excited utterance).

[¶22] Here, the court also considered the sometimes-muted tone of the victim's statements on the recording but nonetheless found, as we note above, that she sounded upset as shown by her tremulous voice, the nature of her statements, and her immediate circumstances. And Sykes himself acknowledges that, during the call, the victim "was upset, frustrated, and angry." There are reasons why a victim's tone of voice—standing alone—may not reflect stress caused by a recent or ongoing startling event. For example, the stressful impact of such an event may result in a "flat affect." *See In re J.V.*, 2015 ME 163, ¶ 12, 129 A.3d 958. Or, if children are present—as there were here—a victim may make a conscious effort to speak in a calm tone for their

benefit. Therefore, although the tone of a victim's speech is relevant to determining the applicability of Rule 803(2), *see Metzger*, 2010 ME 67, ¶ 10, 999 A.2d 947, that factor is not dispositive of the issue. Here, given the court's supported findings, the court did not clearly err by implicitly rejecting Sykes's argument that the evidence was inadmissible because the victim had the presence of mind or the time to reflect and fabricate during the call.

C.    Confrontation Clause

[¶23] Sykes also contends that even if the 9-1-1 recording was an excited utterance and thus not inadmissible on hearsay grounds, it should have been excluded on the independent constitutional ground that admission of the recording, when the declarant did not testify, deprived him of his right to confront the witness—a right guaranteed to him by the Confrontation Clause of the Sixth Amendment to the United States Constitution and by article I, section 6 of the Maine Constitution.[5]

---

[5] The State argues on appeal that Sykes waived his confrontation right because he failed to call the victim to testify even though he knew she was present in the courthouse. This argument is meritless and, in fact, perverts the protections of the Confrontation Clause. It was *the State* that chose to present evidence of an accuser's out-of-court statement without calling her to testify, and that choice did not impose on *Sykes* a responsibility to call a witness who may well have testified against his interest. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009) ("Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege [to subpoena a witness] shifts the consequences of adverse-witness no-shows from the State to the accused.").

[¶24]  The federal Confrontation Clause, which applies to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; *see Davis v. Washington*, 547 U.S. 813, 821 (2006); *Crawford*, 541 U.S. at 42.  Article I, section 6 of the Maine Constitution provides similarly that "[i]n all criminal prosecutions, the accused shall have a right . . . [t]o be confronted by the witnesses against the accused." *See also State v. Rickett*, 2009 ME 22, ¶ 10, 967 A.2d 671.  Even if an out-of-court statement is admissible pursuant to an exception to the hearsay rule, these constitutional provisions bar the "admission of *testimonial* statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination," *Crawford*, 541 U.S. at 53-54 (emphasis added); *see also Metzger*, 2010 ME 67, ¶¶ 13-14, 999 A.2d 947.  *Nontestimonial* statements, on the other hand, do not trigger the protections of the Confrontation Clause.  *See Rickett*, 2009 ME 22, ¶ 11, 967 A.2d 671.

[¶25]  As we have stated, the characteristics of a nontestimonial statement made during a 9-1-1 call are that

(1) the caller is speaking about events as they are actually happening; (2) it would be clear to a reasonable listener that the

victim is facing an ongoing emergency; (3) the nature of the questions asked and answered are objectively necessary and elicited for the purpose of resolving the present emergency; and (4) the victim's demeanor on the phone and circumstances at the time of the call evidence an ongoing emergency.

*Metzger*, 2010 ME 67, ¶ 16, 999 A.2d 947 (quotation marks omitted); *see also Davis*, 547 U.S. at 822.

[¶26]  Here, the clear purpose of the 9-1-1 dispatcher's questions to the victim was not investigative but rather to obtain real-time information about the circumstances underlying the victim's call for police assistance in order to communicate that information to the responding officers so that they could better assess the situation for the safety of the people at the scene and the officers' own safety.  And the victim's responses fall well within the nature of nontestimonial assertions.  For instance, on the recording the victim identified Sykes as her assailant and reported that he hit her with "his closed fist"; she confirmed that there were no weapons in the house; she described Sykes's location within the house and his state of mind; she identified who was in the residence at the time and what they were doing; and she described the house and the cars outside to help the officers find her location.  This and other information provided by the victim, and the context in which it was provided, reveal the nontestimonial character of her statements.

[¶27]  Sykes's reliance on *Hammon v. Indiana*, which was decided in a consolidated opinion with *Davis v. Washington*, 547 U.S. 813 (2006), is misplaced.  In *Hammon*, the victim—who did not testify at trial—made a report of a "domestic disturbance" to a police officer who had responded to her house, but when she made the challenged statements, "[t]here was no emergency in progress; the interrogating officer testified that he had heard no arguments . . . [and w]hen the officer questioned [the victim] for the second time . . . he was not seeking to determine . . . 'what is happening,' but rather 'what happened.'" *Id.* at 819, 829-30.  The United States Supreme Court concluded that, given those circumstances, the victim's statements were testimonial and therefore inadmissible as a constitutional matter.  *Id.* at 829-30.  The Court distinguished the circumstances presented in *Hammon* from those in *Davis*, where the Court concluded that the statements at issue, made during a 9-1-1 call, were nontestimonial because at the time of the call the declarant "was alone, not only unprotected by police (as [the victim in *Hammon*] was protected), but apparently in immediate danger from [the perpetrator].  She was seeking aid, not telling a story about the past." *Id.* at 831; *see also Rickett*, 2009 ME 22, ¶¶ 14-15, 967 A.2d 671 (holding that "the questions asked and answered were of the type that would allow the officers who were called to investigate to assess

the situation, the threat to their own safety, and the possible danger to [the victim]" and were therefore nontestimonial). That is the case here.

[¶28] Because the court did not err by concluding that the victim's statements were nontestimonial, the admission of the 9-1-1 call recording in evidence did not violate Sykes's constitutional rights.

## III. CONCLUSION

[¶29] The court did not err when it determined that the victim's statements on the recording of the 9-1-1 call were both excited utterances and nontestimonial, and we therefore affirm the judgment.

The entry is:

Judgment affirmed.

Jesse James Ian Archer, Esq. (orally), Sherman & Worden, P.A., Auburn, for appellant Dwain A. Sykes

Andrew S. Robinson, District Attorney, and Patricia A. Mador, Asst. Dist. Atty. (orally), Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2017-3247
FOR CLERK REFERENCE ONLY